Steven Craig **COOPER** et al., Plaintiffs–Appellants,

v.

Larry E. **PARRISH** et al., Defendants–Appellees.

No. 98–6324.

United States Court of Appeals, Sixth Circuit.

Argued: Sept. 17, 1999

Decided and Filed: Feb. 9, 2000

---

John E. Herbison (argued and briefed), Robert S. Catz (briefed), Nashville, Tennessee, for Plaintiffs–Appellants.

Larry E. Parrish (briefed), Law Offices of Larry Parrish, Memphis, Tennessee, for Larry E. Parrish.

Mary M. Bers (briefed), Asst. Atty. Gen., Office of Atty. Gen., Civil Rights and Claims Division, Nashville, Tennessee, for Amy P. Weirich, Jennifer S. Nichols and William B. Gibbons.

David E. Caywood (briefed), Causey, Caywood, Taylor, McManus & Bailey, Memphis, Tennessee, for D. J. Alissandratos.

David Wade (argued and briefed), Martin, Tate, Morrow & Marston, Memphis, Tennessee, for Mark Glanker.

Heather C. Ross (briefed), Office of Atty. Gen., Nashville, Tennessee, for John Simmons.

Frank J. Glankler, Jr., Robert L. Hutton (briefed), Glankler Brown, PLLC, Memphis, Tennessee, for John W. Pierotti.

David Martello, City of Memphis Police Dept., Memphis, Tennessee, for David Martello.

Before: RYAN, MOORE, and GIBSON,* Circuit Judges.

* The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## OPINION

MOORE, Circuit Judge.

This case allegedly involves an attempt on the part of a state court chancellor, three state prosecutors, two state investigators, and a private attorney to shut down several nightclubs that feature nude dancing in Memphis, Tennessee. Plaintiffs appeal the district court's decision to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) their 42 U.S.C. § 1983 and related state law claims against all defendants on absolute immunity grounds. Plaintiffs also appeal the district court's decision to invoke *Younger* abstention and dismiss without prejudice their request for prospective injunctive relief.

Plaintiffs allege that the defendants violated their First Amendment, Fourth Amendment, and Fourteenth Amendment procedural and substantive due process rights. They allege that the chancellor violated their constitutional rights when he gave the prosecutors ex parte legal advice. Plaintiffs allege that the prosecutors and the private attorney violated their constitutional rights when they engaged in ex parte communications with the chancellor, filed public nuisance and civil forfeiture complaints, sought temporary restraining orders, executed the restraining orders, and, in the case of one of the prosecutors, swore to the truth of the allegations in the complaints. Finally, plaintiffs allege that the two state investigators violated their constitutional rights when they executed the restraining orders.

For the reasons stated below, we **AFFIRM** the district court's dismissal of the claims against the chancellor, the three state prosecutors, and the two state investigators in this case. The district court, however, improperly dismissed the claims against Larry Parrish because he is not eligible to receive absolute or qualified immunity. Therefore, we **REVERSE** the district court's dismissal of the claims against Parrish and **REMAND** the claims against him to the district court for further proceedings consistent with this opinion. We also **REVERSE** the district court's dismissal of the state law claims against all the defendants and **REMAND** these claims to the district court for further proceedings consistent with this opinion. Finally, we **VACATE** the district court's dismissal of the plaintiffs' claims for injunctive relief on *Younger* abstention grounds and **REMAND** these claims to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiffs set forth their claims against these defendants in two separate complaints, which were filed in cases that the district court consolidated on August 27, 1997. For present purposes, we must accept as true all well-pleaded, nonconclusory allegations contained in the two complaints. *Buckley v. Fitzsimmons*, 509 U.S. 259, 261, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Plaintiffs allege that as early as December of 1995, Larry Parrish, a private attorney practicing law in Tennessee, and John Pierotti, who at the time was the District Attorney General for the Thirtieth Judicial District of Tennessee, agreed to investigate certain nightclubs in the Memphis area. District Attorney General Pierotti subsequently directed Amy Weirich and Jennifer Nichols, two of his assistant district attorneys, to work on the case. On July 7, 1996, Larry Parrish and the three prosecutors from the district attorney general's office met with D.J. Alissandratos, Chancellor for the Thirtieth Judicial District of Tennessee. This was the first of several meetings in which Chancellor Alissandratos allegedly gave Parrish and the three prosecutors "*ex parte* legal advice as to how the pleadings and/or supporting documentation in such lawsuits [involving the nightclubs] should be drafted so as to ensure issuance of *ex parte* orders to close the Plaintiffs' nightclubs or showbars." Joint Appendix ("J.A.") at 495 (Cooper Am. Compl. ¶ 30).

On July 11, 1996, Assistant District Attorneys Weirich and Nichols, along with

Larry Parrish, who earlier that day had been sworn in as a "Special" Assistant District Attorney, filed several complaints in Shelby County Chancery Court in which they alleged that nightclubs in the Memphis area should be shut down because they were in violation of Tennessee's public nuisance statute. Although District Attorney General Pierotti was not listed as counsel in the complaints, as relator he did vouch for the truth of the factual allegations contained in the complaints.

Once Parrish and the other prosecutors had filed the complaints, they asked Chancellor Alissandratos to issue several temporary restraining orders pursuant to TENN.CODE ANN. § 29–3–105 (Michie 1999). The temporary restraining orders purported to authorize Mark Glankler, an investigator in the district attorney general's office, and John Simmons, an agent of the Tennessee Bureau of Investigation, to enter and seize eight of the nightclubs that featured nude dancing in Memphis. On the night of July 11, 1996, at approximately 6:00 p.m., officers entered each of the eight nightclubs and announced that the club was being seized. The employees and customers inside the nightclubs were detained by law enforcement officers for periods of time ranging from one to five hours. The officers required the club occupants to produce identification, which was photocopied or recorded. These individuals were then served subpoenas that required them to report to the district attorney general's office and provide sworn statements.

Law enforcement officers also seized the business offices of Southern Entertainment Management Company, a company that conducted various business functions related to three of the nightclubs. The eight nightclubs and the Southern Management Business offices remained closed and in the custody of the district attorney general's office for fourteen days; thus, the owners did not regain custody of their respective properties until the restraining orders had expired.

On December 10, 1996, the Shelby County district attorney general's office obtained criminal indictments from a grand jury that charged Steven Cooper, who owned three of the nightclubs, with presenting obscene live performances, promoting prostitution, public indecency, and importing and distributing obscene material. The civil public nuisance action against Cooper and other defendants was removed to federal court but ultimately remanded back to the Chancery Court of Shelby County. On March 14, 1997, William Gibbons, who had replaced Pierotti as the District Attorney General for the Thirtieth District of Tennessee, voluntarily nonsuited the civil public nuisance action, which was dismissed without prejudice. Gibbons simultaneously notified the Criminal Court of Shelby County that the claims raised in the civil nuisance actions would be included in the criminal case that at the time was pending against Cooper.

On July 11, 1997, the plaintiffs in the present case filed two separate complaints in federal district court. The district court consolidated the two cases—*Cooper v. Parrish* and *Holland v. Parrish*—on August 26, 1998. Plaintiff Steven Cooper and his businesses brought a 42 U.S.C. § 1983 action alleging that Defendants Alissandratos, Parrish, Pierotti, Weirich, Nichols, Glankler, and Simmons were liable in their individual capacities for the roles these defendants played in filing the public nuisance suit and seizing his property. Cooper alleged that these defendants violated his First Amendment, Fourth Amendment, and Fourteenth Amendment procedural and substantive due process rights, and he alleged that these defendants had engaged in a civil conspiracy under Tennessee common law, had conspired to injure his business under Tennessee common law, and had engaged in an abuse of process. Finally, Cooper asked the district court permanently to enjoin William Gibbons, the current district attorney general in Shelby County, from interfering with his businesses without giving him prior notice and

an opportunity to be heard. J.A. at 508 (Cooper Am. Compl. ¶ 85).

Plaintiff Amanda Holland, who was an employee at one of the nightclubs, also brought a § 1983 suit against Parrish, Pierotti, Glankler, Simmons, and various unnamed law enforcement officers. Plaintiffs named in the Holland complaint also included employees and a delivery person who was detained by law enforcement officers on the night of the raid. Holland alleged the same four constitutional violations listed in Cooper's amended complaint, and she asked the district court to certify her case as a plaintiff class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (2), and/or (3).

Chancellor Alissandratos eventually filed a motion to dismiss all of the claims against him in the Cooper complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on various grounds including that he was entitled to absolute judicial immunity. Parrish, Pierotti, Weirich, Nichols, Glankler, and Simmons also moved to dismiss the claims against them pursuant to Rule 12(b)(6) on absolute and qualified immunity grounds. On May 5, 1998, the district court dismissed the claims against Chancellor Alissandratos, J.A. at 627 (Dist.Ct.Order), and on August 26, 1998, the district court dismissed the claims against the other defendants. *Cooper v. Parrish*, 20 F.Supp.2d 1204 (W.D.Tenn. 1998). Plaintiffs now appeal the district court's dismissal of their claims.

## II. ANALYSIS

■ We review de novo a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, construing the complaint in the light most favorable to the plaintiffs and accepting as true all well-pleaded factual allegations. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995), *cert. denied*, 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 189 (1996). Dismissal is not appropriate unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims that entitle them to

relief. *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. Absolute Immunity for Federal Claims

■ The district court dismissed the § 1983 claims against all of the defendants who had been named in their individual capacities on grounds that these defendants were entitled to absolute immunity. The Supreme Court has adopted a "functional approach" to determine whether an official is entitled to absolute immunity. *Buckley*, 509 U.S. at 269, 113 S.Ct. 2606. This approach looks to "the nature of the function performed, not the identity of the actor who performed it." *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). The Court has also explained that officials who assert an absolute immunity defense bear the burden of demonstrating that they are entitled to absolute immunity given the function that they have performed. *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991).

### 1. Absolute Judicial Immunity

■ Plaintiffs argue that Chancellor Alissandratos is not entitled to absolute immunity because he engaged in unethical conduct and acted as a de facto counsel when he gave prosecutors "*ex parte* legal advice as to how the pleadings and/or supporting documentation in such lawsuits [involving the nightclubs] should be drafted so as to ensure issuance of *ex parte* orders to close the Plaintiffs' nightclubs or showbars." J.A. at 495 (Cooper Am. Compl. ¶ 30). Judicial officers generally are absolutely immune from civil suits for monetary damages under § 1983 for their judicial actions. *Mireles v. Waco*, 502 U.S. 9, 9–10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). The rationale for granting judicial officers absolute immunity when they act in their judicial capacities is that judicial officers should be free to make controversial decisions and act upon their convictions without fear of personal liability. *Stump v.*

*Sparkman*, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

■ There are two situations, however, in which judicial officers are not absolutely immune from potential liability. "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12, 112 S.Ct. 286 (emphasis in original) (citations omitted); *see also Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir.), *cert. denied*, 522 U.S. 996, 118 S.Ct. 560, 139 L.Ed.2d 401 (1997). We therefore must consider whether Chancellor Alissandratos's actions were taken in his judicial capacity and whether his actions were taken in the complete absence of all jurisdiction.

■ The Supreme Court has explained that courts should focus on the "nature" and "function" of an act, and not the act itself, when deciding whether certain actions were taken in a judge's judicial capacity. *Mireles*, 502 U.S. at 13, 112 S.Ct. 286 (quoting *Stump*, 435 U.S. at 362, 98 S.Ct. 1099). This functional approach typically turns on two factors. First, a court must determine whether an act is related to those general functions that are normally performed by a judicial officer. *Stump*, 435 U.S. at 362, 98 S.Ct. 1099. Second, a court must assess whether the parties expected to deal with the judicial officer in the officer's judicial capacity. *Id.* Plaintiffs in the present case argue that Chancellor Alissandratos's ex parte contact with the district attorney general's office and his legal advice regarding ways that the prosecutors could improve their complaints are prosecutorial in nature and therefore are not related to those general functions that are normally performed by a chancellor.

In *Barnes v. Winchell*, 105 F.3d 1111, 1115–22 (6th Cir.1997), we had the opportunity to address what constitutes a prosecutorial as opposed to a judicial act in the absence immunity context. We determined that a municipal court judge had acted within his judicial capacity even though he allegedly had directed two individuals to change charges in a criminal complaint and had helped them prepare one or more of the complaints. Although the judge's conduct may have been improper under state law, we still explained that "absolute judicial immunity extends to a judge who, in exercising his or her authority, commits 'grave procedural errors.'" *Id.* at 1120 (quoting *Stump*, 435 U.S. at 359, 98 S.Ct. 1099). Because the parties independently brought the case before the judge, and because the improper conduct was related to the general judicial functions that are involved in receiving and presiding over a criminal case, we concluded that the judge was acting in his judicial capacity when he changed the criminal charges and helped the individuals prepare their criminal complaint. *Id.* at 1121.

Like the municipal judge in *Barnes*, Chancellor Alissandratos was acting in his judicial capacity when he engaged in ex parte contact with the prosecutors and gave the prosecutors legal advice regarding ways that they could improve their case. As Chancellor Alissandratos has pointed out, Tennessee Rule of Civil Procedure 65.03(1) authorizes a judicial officer to issue a restraining order prior to the commencement of legal action without notice to an adverse party. Moreover, Rule 65.03(2) provides that "[a] restraining order may be granted only by a judge of the court in which the action is pending or is to be filed." Because Chancellor Alissandratos is a judge of the court in which the public nuisance action against the nightclubs was ultimately filed, he was acting within his judicial authority when he met with the prosecutors from the district attorney general's office for the purpose of deciding whether to grant the temporary restraining orders.

Furthermore, even though Chancellor Alissandratos's participation in ex parte communications with the prosecutors in which he allegedly discussed tactics and

planning of the lawsuits may have been improper under Tennessee law, *see* Tenn. Sup.Ct. R. 10, Canon 3.B.(7) (1998) (explaining that a judge shall not engage in ex parte communications with one of the parties unless "the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication"), these communications were nonetheless related to his general judicial functions, which include the authority to issue an ex parte restraining order prior to the commencement of a lawsuit. Tenn. R. Civ. P. 65.03. Indeed, even if we assume that Alissandratos committed "grave procedural errors" when he gave the ex parte legal advice, he still was acting within his judicial capacity because his conduct is related to those general judicial functions that a chancellor would normally perform. *See Barnes*, 105 F.3d at 1120.

■ We also must consider whether Chancellor Alissandratos's actions were taken in the complete absence of all jurisdiction. *Stump*, 435 U.S. at 362, 98 S.Ct. 1099. The Supreme Court has instructed that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57, 98 S.Ct. 1099 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1871)) (footnote omitted). We have interpreted this language to mean that there is sufficient jurisdiction for immunity purposes where a court has *some* subject matter jurisdiction over the underlying legal actions. *Barnes*, 105 F.3d at 1122; *see also Ireland*, 113 F.3d at 1441 ("If the matter upon which the judge acts is clearly outside the subject matter jurisdiction of the court over which the judge presides, the act is done in the clear absence of all jurisdiction.").

In this case, Chancellor Alissandratos had subject matter jurisdiction over the public nuisance action that the district attorney general ultimately brought against the nightclubs. Tenn.Code Ann. § 29-3-102 (1998) ("[J]urisdiction is hereby conferred upon the chancery, circuit, and criminal courts to abate the public nuisances defined in [Tennessee Code Annotated] § 29-3-101, upon petition in the name of the state, upon relation of the attorney general, or any district attorney general."); *see also* Tenn.Code Ann. § 29-3-105 (stating that a chancellor has the authority to "award a temporary writ of injunction, enjoining and restraining the further continuance of such nuisance, and the closing of the building or place wherein the same is conducted."). Thus, even though Chancellor Alissandratos may have acted in excess of his authority when he met with the prosecutors from the district attorney general's office and gave them ex parte legal advice, his actions for judicial immunity purposes were not taken in clear absence of all jurisdiction.

Because the factual allegations in this case describe a situation where Chancellor Alissandratos was acting in his judicial capacity and within the realm of his subject matter jurisdiction, he is absolutely immune from the charges that he violated the plaintiffs' constitutional rights when he engaged in meetings with the prosecutors. Accordingly, the district court properly dismissed these charges on grounds that the plaintiffs have failed to state a claim against Chancellor Alissandratos upon which relief can be granted.

**2. Absolute Prosecutorial Immunity**

■ District Attorney General Pierotti and Assistant District Attorneys Weirich and Nichols claim that the district court properly granted their Rule 12(b)(6) motions to dismiss because they are entitled to absolute prosecutorial immunity. Absolute prosecutorial immunity, like absolute judicial immunity, is a common law principle that shields a prosecutor from § 1983 liability. *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Supreme Court has endorsed a "functional" approach for deter-

mining whether an official is entitled to absolute prosecutorial immunity, explaining that a court should look to "the nature of the function performed, not the identity of the actor who performed it." *Forrester*, 484 U.S. at 229, 108 S.Ct. 538; *see also Ireland*, 113 F.3d at 1443.

 This functional approach focuses on whether the prosecutor's activities are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. 984. Those acts that occur in the course of the prosecutor's role as an advocate for the state, e.g., acts taken to prepare for the initiation of judicial proceedings or to prepare for trial, are protected by absolute immunity. *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606; *see also Ireland*, 113 F.3d at 1444–45. By contrast, a prosecutor who "performs the investigative functions normally performed by a detective or police officer" such as "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested" is entitled only at most to qualified immunity. *Buckley*, 509 U.S. at 273, 113 S.Ct. 2606.

 Plaintiffs argue that the prosecutors in this case are not entitled to absolute immunity because they were pursuing a civil action when they prepared and filed the public nuisance and civil forfeiture complaints. Although the Supreme Court has yet to address directly whether prosecutors are entitled to absolute immunity when they act as advocates in the course of a civil rather than a criminal action, several other courts of appeals have determined that prosecutors are protected by absolute immunity "when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action." *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3rd Cir.1991); *see also Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir.) (explaining that the fact that "the alleged misconduct here arose in the context of a civil proceeding with a law enforcement purpose does not render absolute immunity inappropriate. The essen-

tial inquiry is whether [the prosecutor] was functioning in an enforcement role analogous to that of a prosecutor.") (citations and footnote omitted), *cert. denied*, 516 U.S. 1011, 116 S.Ct. 568, 133 L.Ed.2d 492 (1995). We agree that the prosecutors in this case may still be absolutely immune even though the alleged constitutional violations occurred when the officials were pursuing a civil action. Indeed, as long as the prosecutors were functioning in an enforcement role and acting as advocates for the state in initiating and prosecuting judicial proceedings, they are entitled to an absolute immunity defense.

Plaintiffs argue that the prosecutors have not shown that they were functioning as advocates and therefore are not entitled to absolute immunity when they (1) participated in ex parte communications with Chancellor Alissandratos; (2) prepared and decided to file the public nuisance and civil forfeiture complaints; (3) sought the temporary restraining orders; (4) participated in the forcible occupation of the nightclubs; and (5) in the case of District Attorney General Pierotti, decided to vouch for the truth of the allegations in the complaints.

 The challenge to the prosecutors' participation in ex parte communications with Chancellor Alissandratos is easily disposed of. In their complaint, plaintiffs allege that Pierotti, Weirich, and Nichols met with Alissandratos "for the purpose of privately (and unethically) engaging in *ex parte* communications *regarding lawsuits which were to be filed later* related to nightclubs or showbars offering nude or semi-nude expressive dancing." J.A. at 494 (Cooper Am. Compl. ¶ 28) (second emphasis added). Plaintiffs do not allege that the prosecutors were performing any investigative functions that are normally performed by a detective or police officer when they engaged in the ex parte communication with Chancellor Alissandratos. Instead, these allegations, even when construed in the light most favorable to the plaintiffs, simply describe a situation

where these prosecutors as advocates were meeting with Chancellor Alissandratos to discuss the public nuisance lawsuit and temporary restraining orders that they had decided to pursue.

Several of the other allegations involving the prosecutors are similar to allegations made in *Ireland*, 113 F.3d at 1444–45, a case in which we held that state prosecutors were entitled to absolute prosecutorial immunity for preparing and deciding to file a criminal complaint, seeking an arrest warrant, and presenting the charging document to a judge. In *Ireland*, the plaintiff had failed to allege any conduct on the part of the prosecutors that could be characterized as "investigative activities undertaken antecedent to the [prosecutors'] decision to file criminal charges." *Id.* at 1447. We held that the prosecutors were entitled to absolute immunity notwithstanding the political motives that allegedly led the prosecutors to pursue the criminal charges because "[a] prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer fall squarely within the aegis of absolute prosecutorial immunity." *Id.* at 1446.

Like the prosecutors in *Ireland*, the prosecutors in the present case are entitled to absolute immunity for their decision to file the public nuisance and civil forfeiture complaints and for their decision to seek the temporary restraining orders. Plaintiffs allege that Parrish, Weirich, and Nichols "filed on behalf of the State of Tennessee on relation of the Defendant Pierotti a series of prolix pleadings against various *in rem* and *in personam* Defendants, including the instant Plaintiffs, alleging the existence of public nuisances." J.A. at 496 (Cooper Am. Compl. ¶ 34). Plaintiffs also alleged that "[u]pon filing of the complaints referenced in ¶ 34 above, the Defendants Pierotti, Parrish, Weirich and Nichols importuned the Defendant Alissandratos to issue an *ex parte* directive in each case, which was captioned 'TEMPORARY RESTRAINING ORDER'."

J.A. at 497 (Cooper Am. Compl. ¶ 36). Once again, the plaintiffs have failed to allege that Pierotti, Weirich, and Nichols engaged in any investigative activities. Because the prosecutors were functioning squarely within their capacities as advocates for the state when they filed the public nuisance and civil forfeiture complaints and persuaded Chancellor Alissandratos to issue the temporary restraining orders, they are entitled to absolute prosecutorial immunity.

District Attorney General Pierotti and Assistant District Attorneys Weirich and Nichols are also protected by absolute immunity for the role that they allegedly played in the seizure of property and detention of persons at the nightclubs. Plaintiffs allege that Weirich and Nichols "participated in the unlawful forcible occupation of the Plaintiffs' properties or directed or supervised law enforcement personnel in effecting the challenged seizures." J.A. at 498 (Cooper Am. Compl. ¶ 40). Plaintiffs also allege that "the events that ensued at each nightclub ... resulted directly from the supervision, direction and control of the Defendants Parrish and Pierotti." J.A. at 499 (Cooper Am. Compl. ¶ 41). We have held that an official is entitled to absolute quasi-judicial immunity when that official acts pursuant to a valid court order because the act of "enforcing or executing a court order is intrinsically associated with a judicial proceeding." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir.1994) (citations omitted). Plaintiffs in this case therefore cannot sustain their claims relating to the seizure of the nightclubs unless they allege that the prosecutors engaged in conduct that exceeds the scope of the temporary restraining orders.

Plaintiffs allege that the prosecutors exceeded the scope of the temporary restraining orders when they detained those customers who were at the nightclubs and seized property that was not explicitly identified in the temporary restraining orders. Even if we assume that the plain-

tiffs have standing to challenge the treatment of their customers, an issue on which we express no opinion, we still believe that the language in the temporary restraining orders is broad enough to cover both the temporary detention of the customers at the nightclubs and the seizure of the business offices of Southern Entertainment Management Company, a company that conducted various business functions related to three of the nightclubs. The temporary restraining orders authorized the prosecutors to restrain all "parties, proprietors, putative owners, employees, agents ... [and] all other *persons* of any kind or at any place *from* devaluing, removing, diminishing in quality or quantity, destroying, deleting, amending or altering the *Res*." J.A. at 349 (Temporary Restraining Order) (emphasis in original). The temporary restraining orders also authorized the prosecutors to seize "all personal property of any type or kind ... whether located on or within the Place or some other location (including, but not limited to, off-premises corporate headquarters, off-premises storage locations, and depositories) used in any way in connection with the operation, conduct and/or maintaining the real property." J.A. at 349 (Temporary Restraining Order). Not only do the temporary restraining orders authorize law enforcement officials to restrain any person who could devalue, remove, or diminish the property—a category that could reasonably include those customers who were at the nightclubs on the night of the raid—but they also authorize these officials to seize property that is in any way connected to the operation of the nightclubs—a category that certainly includes the Southern Entertainment Management Company. Thus, the prosecutors did not engage in conduct that exceeded the scope of the temporary restraining orders, and they are entitled to absolute quasi-judicial immunity for their participation in the seizure of property and detention of persons at the nightclubs.

Finally, we must determine whether District Attorney General Pierotti is absolutely immune for swearing to the truth of the factual allegations in the public nuisance and civil forfeiture complaints. Plaintiffs allege that "[e]ach of these pleadings was sworn on the oath of the Defendant Pierotti, who vouched for the truth of the averments of the pleadings." J.A. at 496 (Cooper Am. Compl. ¶ 34). The allegations in the present case are directly analogous to allegations made in *Kalina v. Fletcher*, 522 U.S. 118, 118 S.Ct. 502, 509, 139 L.Ed.2d 471 (1997), a case in which the Supreme Court held that a prosecutor who vouched for the truth of the contents of a criminal complaint in order to obtain an arrest warrant was only entitled to assert qualified immunity. *See also Ireland*, 113 F.3d at 1447-48 (holding that a prosecutor or investigator who vouches for truth of allegations in a complaint was not entitled to absolute immunity).

Pierotti attempts to distinguish *Kalina* by pointing to the Court's statement that "neither federal nor state law made it necessary for the prosecutor [in *Kalina*] to make that certification [in which she swore to the truth of the allegations in a complaint]." *Kalina*, 118 S.Ct. at 509. Pierotti argues that he is entitled to absolute immunity because Tennessee Code Annotated § 29-3-102 specifically authorizes a district attorney general, as well as various other officials or ten or more citizens, to bring a public nuisance suit on relation for the state. Section 29-3-102 does not, however, *require* that a district attorney general swear to the truth of allegations contained in a complaint. Pierotti was not exercising his professional judgment as a prosecutor when he vouched for the truth of allegations in the complaints; instead, he performed "an act that any competent witness might have performed." *Kalina*, 118 S.Ct. at 509. Because the Supreme Court has specifically held that "[t]estifying about facts is the function of the witness, not of the lawyer," Pierotti was not acting as an advocate when he swore to the truth of the allegations in the public nuisance and civil forfeiture complaints, and he therefore is not protected by absolute immunity for this conduct. *Id.* at 510.

### 3. Absolute Immunity for Investigators

■ Plaintiffs also argue that the district court improperly dismissed their claims against Mark Glankler, an investigator in the district attorney general's office, and John Simmons, an agent of the Tennessee Bureau of Investigation, on absolute immunity grounds. In their complaint, plaintiffs allege that "Glankler and Simmons participated in the unlawful forcible occupation of the Plaintiffs' properties or directed or supervised law enforcement personnel in effecting the challenged seizures." J.A. at 498 (Cooper Am. Compl. ¶ 40).

■ Law enforcement officers are entitled to absolute immunity as long as they are able to show that they were performing a quasi-judicial function. *Bush*, 38 F.3d at 847. "Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id.* Law enforcement officials are entitled to absolute quasi-judicial immunity when they act pursuant to a valid court order. *Id.* at 847–48.

Glankler and Simmons have shown that they were acting pursuant to the temporary restraining orders when they detained those customers who were at the nightclubs and seized property that was not explicitly identified in the temporary restraining orders. As we explained above, the language in the temporary restraining orders is broad enough to cover the detention of the customers at the nightclubs and the seizure of the Southern Entertainment Management Company. Glankler and Simmons therefore did not engage in conduct that exceeded the scope of the temporary restraining orders, and they are entitled to absolute immunity for the role they played in the execution of the restraining orders.

### 4. Absolute Immunity for Parrish

■ Plaintiffs also argue that the district court improperly dismissed their claims against Larry Parrish, a private attorney licensed to practice in Tennessee who was informally sworn in as a "Special" Assistant District Attorney on July 11, 1996, because Parrish was not acting as an official government officer and therefore is not entitled to absolute immunity. Private attorneys who allegedly engage in unconstitutional conduct while acting under color of state law are not entitled to immunity. *See Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 699 (6th Cir.1996) (denying private attorneys qualified immunity in § 1983 action). Thus, Parrish is not entitled to absolute immunity unless he can show that he was acting as a public official when he allegedly engaged in the unconstitutional conduct. *See id.*

We conclude that Parrish was not acting as a public official when he allegedly engaged in the conduct at issue in this case because he was never properly appointed to serve as an assistant district attorney. *See Tennessee v. Culbreath*, 1999 WL 134685, *1–2 (March 9, 1999 Tenn.Crim. App..), *cert. granted*, Sept. 13, 1999 (Tenn.). In *Culbreath*, a case that involves the prostitution and obscenity charges that have been brought against several of the plaintiffs in the present case,[1] the Tennessee Court of Criminal Appeals disqualified Parrish from serving as a prosecutor on grounds that he had never been properly appointed to act on behalf of the state. As the court explained:

> We find no statutory authority which would allow the District Attorney General to informally appoint Parrish to act on behalf of the state from December 1995 until he took an oath of office in July 1996. Nor do we find any statutory authority authorizing the District Attorney General to formally appoint Parrish

---

1. We cite *Culbreath* simply as an authority on Tennessee law. Thus, we need not and do not consider whether Parrish is precluded from arguing that he was properly appointed to serve as a "Special" Assistant District Attorney after the decision in the *Culbreath* case.

in July 1996 as a "Special Assistant District Attorney" with the understanding that Parrish would seek compensation from private sources. *Id.* at \*4. Furthermore, the court determined that Parrish was never properly appointed by the Governor as additional counsel to the District Attorney General pursuant to Tennessee Code Annotated § 8–6–106 because the method used to compensate Parrish—he had been paid over $300,000 by a private non-profit organization that supports law enforcement efforts in opposition to obscenity—nullified his appointment. *Id.*

We agree with the Tennessee court's determination that District Attorney General Pierotti was not acting pursuant to statutory authority when he appointed Parrish to serve as his "Special" Assistant District Attorney on July 11, 1996. Because Parrish does not qualify as a public official and is not entitled to absolute prosecutorial or quasi-judicial immunity, the district court erred when it dismissed the plaintiffs' claims against him on absolute immunity grounds.

### B. Qualified Immunity for Federal Claims

■■■ Defendants Pierotti and Parrish also claim that they are entitled to qualified immunity. We have adopted a two-part test for determining whether public officials are entitled to qualified immunity. *Brennan v. Township of Northville*, 78 F.3d 1152, 1154 (6th Cir.1996). First, we must determine whether plaintiffs have alleged a deprivation of a constitutionally protected right at all. *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998); *Brennan*, 78 F.3d at 1154. "If the answer is yes, then the second step is to determine whether the right is so 'clearly established' that a 'reasonable official' would understand that what he is doing violates that right." *Brennan*, 78 F.3d at 1154 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

### 1. Qualified Immunity for Pierotti

■■■ Plaintiffs argue that District Attorney General Pierotti violated their First Amendment and Fourth Amendment rights, as well as their Fourteenth Amendment procedural and substantive due process rights, when he vouched for the truth of the allegations in the civil forfeiture and public nuisance complaints. A civil rights plaintiff, however, cannot simply assert a constitutional violation and rely on broadly stated general rights if that plaintiff hopes to overcome a motion to dismiss on qualified immunity grounds. *Garvie v. Jackson*, 845 F.2d 647, 650 (6th Cir.1988). Instead, the plaintiff must show some sort of connection between the defendant's conduct and the alleged constitutional violations. *See Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Indeed, we have explained that plaintiffs must allege sufficient facts that demonstrate that their constitutional rights have been violated in those instances where a defendant has asserted a qualified immunity defense. *Cameron v. Seitz*, 38 F.3d 264, 273 n. 2 (6th Cir.1994); *Dominque v. Telb*, 831 F.2d 673, 676 (6th Cir.1987). Although a district court should give plaintiffs an opportunity to amend a complaint once a qualified immunity defense is raised, plaintiffs cannot overcome a motion to dismiss on qualified immunity grounds unless they allege facts necessary to show that a defendant has violated their constitutional rights. *Cameron*, 38 F.3d at 273 n. 2.

In this case, plaintiffs have failed to include factual allegations in their amended complaints that show that Pierotti violated their constitutional rights. Although the district court gave the plaintiffs an opportunity to amend their original complaints after the defendants asserted a qualified immunity defense, the plaintiffs continued simply to describe Pierotti's conduct without explaining how this conduct violated their constitutional rights, alleging that "[e]ach of these pleadings was sworn on the oath of the Defendant Pierotti, who

vouched for the truth of the averments of the pleadings." J.A. at 496 (Cooper Am. Compl. ¶ 34). The plaintiffs have failed to show how Pierotti's decision to swear to the truth of the allegations in the civil forfeiture and public nuisance complaints deprived them of their First Amendment, Fourth Amendment, or Fourteenth Amendment rights. Thus, the district court should have dismissed the remaining claims against District Attorney General Pierotti on qualified immunity grounds.

## 2. Qualified Immunity for Parrish

Plaintiffs argue that Larry Parrish cannot successfully assert a qualified immunity defense because he was not acting as a public official when he allegedly engaged in the unconstitutional conduct at issue in this case. Although we have concluded that Parrish was not acting as a public official when he assisted the prosecutors and therefore is not entitled to absolute immunity, we still must determine whether he can successfully assert a qualified immunity defense.[2]

Private litigants generally are not eligible to receive qualified immunity from suit under § 1983. *Wyatt v. Cole*, 504 U.S. 158, 168–69, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992); *see also Vector Research*, 76 F.3d at 698–99; *Duncan v. Peck*, 844 F.2d 1261, 1264–65 (6th Cir.1988). However, we have held on one occasion that private attorneys who work pursuant to a government contract are eligible to receive qualified immunity in certain limited circumstances. *Cullinan v. Abramson*, 128 F.3d 301, 310 (6th Cir.1997), *cert. denied*, 523 U.S. 1094, 118 S.Ct. 1560, 140 L.Ed.2d 792 (1998). In *Cullinan*, we held that a law firm that had been hired by the City of Louisville to serve as outside counsel was entitled to qualified immunity against § 1983 claims. *Id.* The court relied exclu-

sively on a statement made by the Supreme Court in *Richardson v. McKnight*, 521 U.S. 399, 407, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997), which noted in dictum that "the common law '*did* provide a kind of immunity for certain private defendants, such as doctors or lawyers *who performed services at the behest of the sovereign.*'" *Id.* at 310 (second emphasis added). This statement, along with the fact that the panel saw "no good reason to hold the city's in-house counsel eligible for qualified immunity and not the city's outside counsel," led the panel to conclude that the private attorneys in that case could successfully assert a qualified immunity defense. *Id.*

Even if we assume that the Supreme Court in *Richardson* intended to extend the qualified immunity doctrine to "doctors or lawyers who performed services at the behest of the sovereign," *Richardson*, 521 U.S. at 407, 117 S.Ct. 2100, Parrish still is not entitled to qualified immunity because the circumstances in this case are not analogous to those in *Cullinan*. For instance, the court in *Cullinan* pointed out that there was no doubt that the private attorneys in that case were acting at the behest of the city. As the court explained, "[t]he city retained outside legal counsel for the defense of the lawsuit, entering into a professional service agreement with [the law firm]." *Cullinan*, 128 F.3d at 305–06. In the present case, by contrast, there is little—if any—evidence that shows that Parrish was acting at the behest of the state when he helped the prosecutors pursue legal action against the nightclubs. In fact, Parrish acknowledges in his brief that he was not paid by the district attorney general's office for his legal services. Parrish's Br. at 16.

2. If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983—even though the party would not be eligible to assert a qualified immunity defense. *Wyatt v. Cole*, 504 U.S. 158, 168–69, 112 S.Ct. 1827,

118 L.Ed.2d 504 (1992); *see also Vector Research*, 76 F.3d at 698 ("'[A] party who is not a public official may be liable pursuant to 42 U.S.C. § 1983 and yet not be entitled to qualified immunity because, if not a public official, the reason for affording qualified immunity does not exist.'").

Furthermore, we believe that extending qualified immunity to a private attorney who works alongside prosecutors in an unofficial capacity would be inconsistent with the goals and objectives that underlie the qualified immunity doctrine. Parrish was not performing any unique government functions when he allegedly engaged in the unconstitutional conduct at issue in this case; thus, no public interest would be unduly impaired if he is forced to resolve the § 1983 claims on the merits. Because Parrish was not acting at the behest of the state when he participated in the investigation and pursued legal action against the nightclubs, and because the circumstances in this case do not implicate the policy concerns that underlie the qualified immunity doctrine, he is not eligible to assert a qualified immunity defense in this case.

### C. Immunity for State Claims

The Cooper plaintiffs have also alleged that the defendants engaged in a civil conspiracy under Tennessee common law, conspired to injure Cooper's business under Tennessee common law, and engaged in an abuse of process. The district court dismissed the entire case without ruling explicitly on these state law claims. Although Tennessee courts appear to incorporate the common law immunity doctrine used by federal courts in § 1983 actions, see, e.g., Shell v. Tennessee, 893 S.W.2d 416, 422 n. 6 (Tenn.1995); Willett v. Ford, 603 S.W.2d 143, 146–48 (Tenn.Ct.App. 1979), we believe that the exact scope of the Tennessee common law immunity doctrine raises novel and complex issues of state law that Tennessee courts have yet to address fully.

In Shell, the Tennessee Supreme Court relied on federal precedent in § 1983 cases to determine whether the plaintiffs' state law claims against an assistant district attorney should be dismissed on absolute immunity grounds. Shell, 893 S.W.2d at 422–23. The court cited Buckley v. Fitzsimmons, 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993), and Burns v. Reed, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), and explained that these cases

"are relevant to [the state law claims] because § 1983 incorporates the common-law immunities historically granted to governmental officers." Shell, 893 S.W.2d at 422 n. 6. Based on the court's analysis in Shell, we believe that the Tennessee Supreme Court generally would apply federal common law immunity principles if it had the opportunity to address the state law claims in this case. However, there may be certain nuances in the Tennessee common law immunity doctrine that Tennessee courts have yet to address. Thus, we suggest that on remand the district court consider whether it should decline to exercise its supplemental jurisdiction over the state law claims in this case pursuant to 28 U.S.C. § 1367(c)(1). If the district court on remand chooses to exercise its supplemental jurisdiction, it will need to determine what immunities (if any) under Tennessee law pertain to the various state law claims.

### D. *Younger* Abstention

The Cooper plaintiffs also sued William Gibbons, the current District Attorney General in Shelby County, in an attempt to obtain a prospective injunction that would prevent Gibbons, or any person acting in concert with him, from ever pursuing an action that has the effect of inhibiting Cooper's businesses without giving him prior notice and an opportunity to be heard. Cooper specifically seeks:

[P]reliminary and permanent injunctions prohibiting the Defendants Gibbons, Parrish, Weirich and Nichols, their agents, servants, employees and all person[s] acting in concert with these Defendants, from proceeding in any court to procure any form of process related to the Plaintiffs' businesses which would have the effect of inhibiting the Plaintiffs' exercise of constitutional rights or interfering with operation of the Plaintiffs' business(es) without giving the Plaintiffs and their attorney(s) notice and an opportunity to be heard prior to the issuance of such process.

J.A. at 508 (Cooper Am. Compl. ¶ 85). The district court abstained pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and dismissed without prejudice Cooper's claim for injunctive relief. *Cooper*, 20 F.Supp.2d at 1211.

We review a district court's decision to invoke *Younger* abstention de novo. *Hayse v. Wethington*, 110 F.3d 18, 20 (6th Cir.1997). The *Younger* abstention doctrine instructs a federal court to abstain from enjoining a pending state court proceeding "when the state's interest is so important that exercising federal jurisdiction would disrupt the comity between federal and state courts." *Hayse*, 110 F.3d at 20. We have noted that abstention in civil cases requires the satisfaction of three elements. "[F]ederal courts should abstain when (1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims." *Id.*

The first element for *Younger* abstention is satisfied if a state court proceeding was pending when Cooper filed his federal complaint. *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir.1986). Cooper argues that no state court proceedings were pending in this case when he filed his federal complaint on July 11, 1997, relying on the fact that District Attorney General Gibbons voluntarily nonsuited the nuisance action before Cooper filed his federal complaint. District Attorney General Gibbons responds that the state criminal proceedings involving the obscenity and prostitution charges were still pending against Cooper when he filed his federal complaint. There is insufficient evidence in the record, however, to determine whether the first *Younger* requirement has been met.[3] Thus, we remand this aspect of the

case to the district court so that it can determine whether criminal proceedings were actually pending against Cooper when he filed his federal complaint.

If there were state criminal proceedings pending when Cooper filed his federal complaint, then we agree with the district court's conclusion that these proceedings would likely involve important state interests. As the district court in this case pointed out, the state has an important interest in "exposing and prohibiting promotions of prostitution, illegal obscene live performances, acts that contribute to the delinquency of minors, as well as distributions and importations of obscene material." *Cooper*, 20 F.Supp.2d at 1211. Because Cooper was indicted pursuant to statutes that are meant to protect public health and safety, *see, e.g., DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 410-11 (6th Cir.1997) (explaining that city ordinance prohibiting entertainers in adult establishments from coming within six feet of customers did not violate First Amendment because ordinance furthered important state interests in prevention of crime and disease), the second *Younger* requirement would be satisfied by pending state prosecutions.

The third requirement for *Younger* abstention is that there be "an adequate opportunity in the state proceedings to raise constitutional challenges." *Fieger v. Thomas*, 74 F.3d 740, 745 (6th Cir.1996) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). In the present case, this requirement would be satisfied only if District Attorney General Gibbons included the nuisance charges against Cooper in the criminal proceedings that were pending in state court, assuming that criminal proceedings were in fact pending when Cooper filed his

---

**3.** There is no evidence that we can find in the record—other than the indictments that a grand jury returned against Cooper on December 10, 1996 that suggests that criminal proceedings were pending against Cooper when he filed his federal complaint on July

11, 1997. Because these indictments could have been dismissed before Cooper filed his federal complaint, we cannot determine whether the first *Younger* requirement has been met.

federal complaint. Indeed, if state criminal proceedings involving the nuisance charges were pending at the time Cooper filed his federal complaint, then Cooper could have raised his constitutional claims in these proceedings. *See Tennessee v. Draper*, 800 S.W.2d 489, 497. (Tenn.Crim. App.1990) ("Our courts have held that constitutional issues may be raised and considered at any stage of the proceedings.") (footnote omitted); *Veach v. Tennessee*, 491 S.W.2d 81, 83 (Tenn.1973) (explaining that a constitutional question may be raised at any time in a criminal proceeding even though appellate courts generally only review questions presented for determination in the trial court). However, if District Attorney General Gibbons did not include the nuisance charges in the state criminal proceedings, then Cooper would not have had an adequate opportunity to raise his constitutional challenges to the nuisance statute. Therefore, we request that the district court on remand determine whether District Attorney General Gibbons included the nuisance charges in the state criminal proceedings, assuming that there were criminal proceedings pending when Cooper filed his federal complaint. If the district court determines on remand that District Attorney General Gibbons did not include the nuisance charges in the state criminal proceedings, then the district court should address the merits of Cooper's request for injunctive relief.

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's dismissal of the federal claims against the defendants Alissandratos, Pierotti, Weirich, Nichols, Glankler, and Simmons. We **REVERSE** the district court's dismissal of the claims against Parrish and **REMAND** the claims against him to the district court for further proceedings consistent with this opinion. We also **REVERSE** the district court's dismissal of the state law claims against all the defendants and **REMAND** these claims to the district court for further proceedings consistent with this opinion.

Finally, we **VACATE** the district court's dismissal of the plaintiffs' claims for injunctive relief on *Younger* abstention grounds and **REMAND** those claims to the district court for further proceedings consistent with this opinion.