NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0440n.06

Case No. 21-5324

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED
Sep 22, 2021
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| LOOKOUT MOUNTAIN SUITES, LLC, | ) |
| | ) |
|    Plaintiff-Appellant, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| NEAL PINKSTON, District Attorney General | ) |
| for 11th Judicial District of Tennessee, in his | ) |
| individual capacity; SERGEANT KENDON | ) |
| MASSENGALE, #631, Chattanooga Police | ) |
| Department, in his individual capacity; | ) |
| OFFICER ARYIEL NOVAK, #881, | ) |
| Chattanooga Police Department, in her | ) |
| individual capacity; INVESTIGATOR | ) |
| JAMAAL NOBLE, #818, Chattanooga Police | ) |
| Department, in his individual capacity; CITY | ) |
| OF CHATTANOOGA, TENNESSEE, a | ) |
| Tennessee Municipality, | ) |
| | ) |
|    Defendants-Appellees. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

BEFORE: SUTTON, Chief Judge; McKEAGUE and WHITE, Circuit Judges.

SUTTON, Chief Judge. A Tennessee district attorney sued a motel in state court, alleging that it created a public nuisance. The court entered an *ex parte* temporary restraining order, permitting the State to padlock the motel. Although the locks came off after a hearing five days later, the company that owned the motel sued several government actors under § 1983, claiming

that they had deprived it of its property without due process of law by entering the initial *ex parte* order. The district court granted summary judgment to the defendants, a ruling we now affirm.

Lookout Mountain Suites, LLC, owned a motel in Chattanooga, Tennessee. The motel generated more than its fair share of unlawful activity. Over a three-year span, officers with the Chattanooga Police Department responded to 850 9-1-1 calls in the area, a much larger number than comparable motels. Visiting the motel "several times a week," R.2-3 at 105, officers found drugs, bugs, and crime, with offenses running the gamut from traffic violations to shootings.

Fed up, the Chattanooga Police Department compiled data about crime at the motel and sent a report to District Attorney Neal Pinkston. After reviewing the evidence, Pinkston concluded that the motel counted as a public nuisance under a Tennessee statute, Tenn. Code Ann. § 29-3-101.

Acting on behalf of the State, Pinkston filed an *ex parte* petition to abate the nuisance in state court. He attached to the complaint the sworn statements of three Chattanooga police officers—Kendon Massengale, Jamaal Noble, and Aryiel Novak—detailing their experiences with the motel. He also attached the police department's data about the crime there.

Invoking a provision of the same Tennessee statute, he asked the court to issue a temporary restraining order *ex parte*. Tenn. Code Ann. §§ 29-3-105, 106(c). The state court granted the request, permitting the government to padlock the motel and displace its residents. The Hamilton County Sheriff's Office put the locks in place.

Consistent with Tennessee law, the state court invited Lookout Mountain to attend a hearing five days later. *Id.* § 29-3-106(c). While the court found that the motel created a public nuisance, it dissolved the temporary restraining order and, in its place, ordered Lookout Mountain to implement additional security measures to abate the nuisance. Whether unable to comply or

unwilling to comply, Lookout Mountain sold the motel, prompting the government to dismiss its public nuisance lawsuit.

Lookout Mountain responded with a lawsuit of its own. It sued the district attorney, the three officers, and the city, all under § 1983, alleging that they had violated the Fourteenth Amendment's Due Process Clause by padlocking the motel without giving Lookout Mountain notice first. The district court granted summary judgment to each defendant. This appeal followed.

*District Attorney Pinkston.* Up first is whether the district court properly granted Pinkston absolute immunity. Whether it applies turns on the role Pinkston played in obtaining permission to padlock the motel. Absolute immunity covers functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The "analytical key to prosecutorial immunity . . . is *advocacy*—whether the actions in question are those of an advocate." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc). Acts of advocacy include those "connected with the initiation and conduct of a prosecution," *Burns v. Reed*, 500 U.S. 478, 492 (1991), but not those that "cast" the prosecutor "in the role of an administrator," "investigative officer," or "complaining witness," *Kalina v. Fletcher*, 522 U.S. 118, 125, 131 (1997) (quotation omitted).

Absolute immunity shields Pinkston. He evaluated the evidence, filed a complaint, and sought a temporary restraining order under a state law designed for this purpose. Each act represents one "connected with the initiation and conduct of a prosecution." *Burns*, 500 U.S. at 492.

We have been down this road before. In *Cooper v. Parrish*, we held that absolute immunity protected a Tennessee prosecutor's decision to file a public nuisance complaint and to seek an *ex parte* temporary restraining order. 203 F.3d 937, 948 (6th Cir. 2000). Such acts, we said, fall

"squarely within" a prosecutor's "role as an advocate," as they relate to the "initiation of judicial proceedings." *Id.* at 947–48. As in that case, so here.

*Rieves v. Town of Smyrna* does not solve Lookout Mountain's problem. 959 F.3d 678 (6th Cir. 2020). Although that decision declined to extend absolute immunity to Tennessee prosecutors pursuing a public nuisance, it did so because the prosecutors instructed officers to conduct raids on the property, and they otherwise oversaw the investigation. *Id.* at 692–93. By stepping out of the shoes of an advocate and into the boots of an investigator, the prosecutors made themselves ineligible for absolute immunity. *Id.* at 694; *see Kalina*, 522 U.S. at 125. That is not what happened here.

This also is not a case in which Pinkston supported the nuisance complaint with his own sworn testimony, a move that would have swapped his advocate's cap for that of a "complaining witness," able to assert only qualified immunity. *Kalina*, 522 U.S. at 131. Discovery proved that the officers, not Pinkston, swore to the truth of the allegations contained in the complaint. After reading the complaint, each officer verified before a notary public: "I have read the foregoing and participated in the investigation referenced above. To the best of my information, knowledge and belief, I do attest, upon penalty of perjury, that the foregoing is true and accurate." R.2-3 at 5–7; *see also id.* at 103–08. Pinkston did no such thing. Although he filed the officers' verifications along with the complaint, Pinkston did not "execute any verification" of his own and indeed "made no oath in relation" to the nuisance complaint. R.218 at 4. Because Pinkston simply "select[ed] . . . the particular facts to include" in the complaint, without "attesting" to their "truth," he acted as an "advocate," not as a "complaining witness." *Kalina*, 522 U.S. at 130–31.

*Officers Massengale, Noble, and Novak.* Up next is whether the district court properly granted the officers qualified immunity. As in all qualified immunity cases, this case prompts two

familiar questions. Did the officers violate Lookout Mountain's constitutional rights? If so, were those rights clearly established at the time? *See Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009).

The pertinent constitutional rights flow from the Fourteenth Amendment, which says that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. When it comes to deprivations of property, there is a rule and an exception to the rule. The rule: Notice and a hearing are usually required before divesting someone of a property interest. *See, e.g.*, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 12–13 (1978). The exception: An *ex parte* order temporarily may divest a property interest if "quick action" is needed. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (quotation omitted).

While there is evidence that quick action was needed, we need not rely on that ground. There are two other defects with this due process claim.

*First*, to prevail on this claim, Lookout Mountain had to show that *these* officers violated its constitutional rights. That requires a "connection between the defendant's conduct and the alleged constitutional violation[]," here between these officers and the *ex parte* padlocking of the motel. *Cooper*, 203 F.3d at 951. But Lookout Mountain has not made that showing. The investigating officers, the record establishes, were "not involved in any way with making the decision to seek an order padlocking the [motel] without prior notice . . . to the owner." R.212 at 3–4. Pinkston "alone" decided to "proceed with an abatement and to do so *ex parte*." R.218 at 2, 4. That is just what the district court concluded, and so do we. Lookout Mountain, notably, does not challenge this aspect of the district court's ruling. Nor has it explained how it can prevail without doing so. The district court properly granted summary judgment to the officers.

*Second*, Lookout Mountain has not identified any clearly established law to support its claim. Although it cites seven cases in a bulleted list, none comes close to holding that a public nuisance of this sort falls short of an exigent circumstance that justifies withholding pre-deprivation process.

*The City of Chattanooga.* Up third is whether the district court properly dismissed Lookout Mountain's failure-to-train claim against the city. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Our conclusion that Lookout Mountain has not identified any clearly established law defeats this claim. *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994–95 (6th Cir. 2017). Lookout Mountain does not argue otherwise.

*Other arguments.* Lookout Mountain devotes most of its appellate briefing to arguments it did not make in the district court: that Tennessee's public nuisance statute does not permit shuttering a property without prior notice, that Pinkston lacked probable cause to believe that the motel amounted to a public nuisance, and that the officers gave false statements in their affidavits. The company simply did not raise these arguments below. In the words of the district court: "Plaintiff does not challenge the truth of these affidavits. In fact, Plaintiff does not argue its motel was not a public nuisance. Instead, Plaintiff essentially claims Attorney General Pinkston was incorrect in deciding an emergency situation existed such that proceeding *ex parte* was constitutionally permissible." R.238 at 15. By failing to raise these arguments below, Lookout Mountain forfeited them on appeal. *See 600 Marshall Ent. Concepts, LLC v. City of Memphis*, 705 F.3d 576, 585 (6th Cir. 2013).

*Motion for Sanctions.* The city and the officers filed a motion for attorney's fees and other sanctions, arguing that Lookout Mountain filed a frivolous appeal. While this issue presents the closest question in the case, we will not grant this motion today. But the company's counsel would

be well advised to consider more carefully in the future what amounts to a colorable ground for appeal and what does not.

We affirm.