Steven C. **COOPER**, et al., Plaintiffs,

v.

. Larry E. **PARRISH**, et al., Defendants.

Amanda **HOLLAND**, et al., Plaintiffs,

v.

Larry **PARRISH**, et al., Defendants.

Nos. 97–2625, 97–2626.

United States District Court,
W.D. Tennessee.

Aug. 26, 1998.

John E. Herbison, Law Office of John E. Herbison, Nashville, TN, for Steven Craig Cooper, Southern Entertainment Management Co., Inc., Night Moves of Memphis, Inc., 777 Memphis, Inc. and Club Tiffany, Inc.

Larry E. Parrish, Law Offices of Larry E. Parrish, Memphis, TN, pro se.

Mary M. Bers, Heather C. Ross, Office of Attorney General, Nashville, TN, for Amy P.

Weirich, Jennifer S. Nichols, John Simmons and William B. Gibbons.

David E. Caywood, Marc E. Reisman, Causey Caywood Taylor McManus & Bailey, Memphis, TN, Mary M. Bers, Office of Attorney General, Civil Rights and Claims Div., for D.J. Alissandratos.

David Wade, Martin Tate Morrow & Marston, Memphis, TN, for Mark Glankler.

David Martello, Memphis, TN, pro se.

Frank J. Glankler, Jr., Robert L. Hutton, Glankler Brown Gilliland Chase Robinson & Raines, Memphis, TN, for John W. Pierotti.

## ORDER GRANTING DEFENDANTS PIEROTTI, PARRISH, WEIRICH, NICHOLS, GLANKLER, SIMMONS, AND GIBBONS'S MOTIONS TO DISMISS ORIGINAL AND AMENDED COMPLAINTS

DONALD, District Judge.

Before the Court are the motions of Defendants Larry E. Parrish (Parrish), John W. Pierotti (Pierotti), William B. Gibbons (Gibbons), Jennifer Nichols (Nichols), Amy Weirich (Weirich), Mark Glankler (Glankler), and John Simmons (Simmons) to dismiss the amended complaints of Plaintiffs Steven C. Cooper, et al. (Cooper) and Plaintiffs Amanda Holland, et al. (Holland). Assistant Attorneys General Nichols and Weirich, as well as Simmons, a T.B.I. agent, and Glankler, an investigator for the District Attorney General's office, assisted in enforcing the order of the Chancery Court to close certain adult entertainment businesses.[1]

Plaintiffs have brought suit alleging that Defendants violated their constitutional rights when, acting pursuant to a Temporary Restraining Order signed by Chancellor Alissandratos, they seized eight night clubs. The Plaintiffs, entertainers, managers, servers, receptionists, doormen and a delivery person, allege that during the raids, they were allegedly detained and searched in violation of their Fourth and Fourteenth Amendment rights. They further allege an infringement of their First Amendment right of "artistic expression."

At the time of the acts complained of by Plaintiffs, Pierotti was the District Attorney General for the Thirteenth Judicial District of Tennessee charged with enforcing the laws of the state of Tennessee. Gibbons succeeded Pierotti as District Attorney General. Nichols and Weirich were assistant attorneys generally working under the umbrella powers of the office and clothed with the powers attendant to that office. Parrish was a special assistant attorney general employed because of his vast expertise in the area of law which is the subject of the restraining order.

Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 1983.

## FACTS

Possibly as early as December of 1995, Defendant Pierotti, with the assistance of Parrish, Weirich, and Nichols prepared legal actions pursuant to Tennessee's nuisance statute, Tenn.Code Ann. § 29–3–101, 105, against several Shelby County nightclubs offering nude or semi nude "dancing." All Plaintiffs either own nightclubs or have worked at nightclubs featuring nude or semi nude "dancing" in Shelby County, Tennessee. On approximately July 7, 1996, in preparation for bringing actions, the defendants met with Chancellor D.J. Alissandratos to discuss filing a nuisance action against Plaintiffs.[2] Defendants discussed with Chancellor Alissandratos how the pleadings and supporting documentation for the lawsuits should be drafted. On July 11, 1996, Defendants Parrish, Pierotti, Weirich, and Nichols filed, on behalf of the state of Tennessee, a series of pleadings against the Plaintiff club owners. Pierotti, Parrish, Weirich, and Nichols then petitioned Chancellor Alissandratos to issue Temporary Restraining Orders authorizing Defendants Simmons, Glankler, and dozens of police officers to enter and forcibly seize eight locations. The eight locations seized all in Memphis, Shelby County, Tennessee were:

---

1. Gibbons is the current District Attorney General and did not play any role in temporarily shutting down Plaintiffs' businesses.

2. Plaintiffs' action against Chancellor Alissandratos was dismissed by this Court in an order entered May 5, 1998.

The Gold Club        777 North White Station Road;
The MENZ Club     3918 Winchester;
Platinum Plus        2514 Mt. Moriah;
Valentino's             3880 Lamar;
King of Clubs         1741 E. Brooks Road;
Babe's                    1575 E. Brooks Road;
Queen of Hearts   2882 Lamb Place; and
Tiffany's Cabaret  3659 South Mendenhall [3]

On July 11, 1996, at approximately 6:00 p.m., an officer entered each of the eight nightclubs, announced that the club was being seized and ordered everyone detained. All persons within the nightclubs were held by law enforcement officers for periods of time between one and five hours and were required to produce identification which was recorded or photocopied. The club occupants were then served subpoenas to appear before Parrish and Pierotti and provide sworn statements. Some employees and patrons of the nightclubs were required to respond to questioning and submit to a search of their personal property before being allowed to leave. Furthermore, when new customers arrived during the seizures, some were allowed to enter the respective nightclub. Upon entering the nightclub, the new customers were required to produce identification and were then served subpoenas.

The eight seized nightclubs remained closed and in the custody of the state/attorney general for fourteen days until the expiration of the Temporary Restraining Order. The owners then regained possession of their respective nightclubs. In addition to the nightclubs, the business offices of Plaintiff Cooper's Southern Entertainment Management Company, Inc., located at 995 South Yates in Shelby County, was seized on July 11, 1996.[4] These offices also remained closed until the Temporary Restraining Order expired fourteen days later.

On March 14, 1997, the public nuisance actions against the instant Plaintiffs were dismissed without prejudice when Defendant Gibbons' office filed a notice of nonsuit.

The Cooper and Holland plaintiffs filed separate complaints on July 11, 1997. The two cases were consolidated on August 27, 1997. Defendants Parrish, Pierotti, Alissandratos, Glankler, and Simmons each filed separate motions to dismiss the complaints. Gibbons, Nichols, and Weirich filed a joint motion to dismiss. Following Defendants' motions to dismiss, Cooper filed an amended complaint on September 19, 1997, and Holland filed an amended complaint on January 20, 1998.

The amended complaints sue all Defendants, except Gibbons, in their individual capacities under the color of law. Only Cooper sues Gibbons, who succeeded Pierotti as District Attorney General on November 1, 1996, in his official capacity. Gibbons is sued exclusively for injunctive relief from future investigations.

Cooper's amended complaint specifically alleges violations of Plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States. Additionally, Cooper requests compensatory and punitive damages for the torts of civil conspiracy under Tennessee common law, conspiring to injure another's business under Tennessee common law, abuse of process, and finally a preliminary and permanent injunction upon Defendant Gibbons. Cooper asks that the Court assign all costs of the action, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988, to Defendants and that the Court grant any further relief that might be appropriate.

Holland's amended complaint also alleges the same four constitutional amendment violations listed in Cooper's amended complaint. Holland also requests that the Court certify this case as a class action under the provisions of Fed.R.Civ.P. 23(a) and 23(b)(1)(3). Finally, the Holland Plaintiffs seek compensatory damages, punitive damages, litigation

---

3. A temporary restraining order was issued authorizing the closure of 3658 South Mendenhall. In fact, no such address exists in Shelby County. Yet the name of the nightclub and description of the property on the order was sufficient to lead officers to the proper location which was to be closed. The mistake concerning the correct address was reasonable and has no bearing on the legality of the order.

4. According to Plaintiff Cooper, Southern Entertainment Management Company, Inc. conducts various business functions related to the operation of the Gold Club, Tiffany's Cabaret, and the Menz Club, but is not a location where "dancing" occurs.

costs and expenses, including reasonable attorney's fees, and any further relief to which they may be entitled.

## MOTION TO DISMISS

■ In a motion to dismiss under Fed. R.Civ.P. 12(b)(6), the movant has the burden of demonstrating that the claimant can prove no set of facts in support of her claim which would entitle her to relief. Fed.R.Civ.P. 12(b)(6); *Windsor v. The Tennessean,* 719 F.2d 155, at 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The Court must presume all factual allegations of the complaint to be true, and all reasonable inferences are made in favor of the nonmoving party. *Windsor,* 719 F.2d 155, at 158. At issue is not whether the claimant will prevail, but whether, on the strength of the complaint, the claimant is entitled to offer evidence to support her claims. *Scheuer v. Rhodes,* 416 U.S. 232, at 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Id.* Dismissal is also proper if an affirmative defense or other bar to relief is apparent from the face of the complaint. 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.07[2.–5] (2d ed.1989).

Defendants Pierotti, Parrish, Weirich, and Nichols premise their Motions to Dismiss on several grounds, including absolute prosecutorial immunity. Similarly, Glankler and Simmons use the related affirmative defense of quasi-judicial immunity to block the immediate lawsuit. And finally, defendant Gibbons advances that the doctrine of abstention should prohibit injunctive relief sought against him. *Younger v. Harris,* 401 U.S. 37, at 43–44, 91 S.Ct. 746, at 750–55, 27 L.Ed.2d 669, at 672–74 (1971).

Defendants Pierotti, Parrish, Weirich, and Nichols have all filed motions to dismiss based on absolute immunity. For reasons set forth therein those motions are **GRANTED.**

## ABSOLUTE PROSECUTORIAL IMMUNITY

■ Absolute prosecutorial immunity is a common law principle used to shield a prosecutor from § 1983 liability. *Imbler v. Pachtman,* 424 U.S. 409, at 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128, (1976). Prosecutors who initiate a prosecution and advance the state's case in that action can not be sued for money damages associated with that action. *Id.* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128, (1976). Decisions following *Imbler* have held that prosecutors are entitled to absolute immunity for their actions in the filing of criminal complaints, the issuance of arrest warrants, and the decisions they make whether or not to pursue charges or to appeal the dismissal of charges. *Buckley v. Fitzsimmons,* 509 U.S. 259, at 276, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Burns v. Reed,* 500 U.S. 478, at 492–96, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *Joseph v. Patterson,* 795 F.2d 549, at 555 (6th Cir.1986). Yet, the doctrine has parameters. Prosecutors can not successfully use absolute prosecutorial immunity to block lawsuits arising from their investigative or administrative capacity. *Wayte v. United States,* 470 U.S. 598, at 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

The reasoning behind absolute prosecutorial immunity reflects a concern to protect a prosecutor from harassment by unfounded [retaliatory] litigation that would cause a deflection of the prosecutor's energies from his public duties. *Imbler,* 424 U.S. 409, at 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Absolute prosecutorial immunity also protects against the possibility that prosecutors would hedge their decisions in the face of foreseeable litigation instead of freely exercising their judgment as required by public trust. *Id.*

■ The defendant official who seeks absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified immunity instead of absolute immunity is sufficient to protect government officials in the exercise of their duties. *Burns,* 500 U.S. 478, 486–87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). The Supreme Court has provided absolute immunity to certain government officials and has endorsed a "functional" approach for determining whether an official is entitled to absolute immunity.

This approach focuses on "the nature of the function performed, not the identity of the actor who performed it." *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir.1997). According to the functional approach, "immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester v. White*, 484 U.S. 219, at 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (Emphasis in original).

In the recent case of *Ireland v. Tunis*, the Sixth Circuit precisely held that a state prosecutor is shielded by absolute prosecutorial immunity when he decides to bring forth criminal charges, seeks an arrest warrant, or presents documents to a judicial officer. *Ireland*, 113 F.3d 1435 (1988). Similarly, in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the Supreme Court held that a state prosecutor is entitled to absolute immunity from a civil suit for damages under 42 U.S.C. § 1983 for activities that are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. 984. Activities which are considered to be "intimately associated with the judicial phase of a criminal process" are: deciding whether and whom to prosecute; deciding what evidence and witnesses to present; and obtaining, reviewing, and evaluating evidence in connection with all of the above. *Id.* at 431, 96 S.Ct. 984. Unquestionably, absolute prosecutorial immunity enjoys broad application.

■ It is clear that Pierotti, the District Attorney General for the Thirtieth Judicial District of the State of Tennessee, sought and obtained an *ex parte* order in Chancery Court of Shelby County to close nude, exotic dance clubs, pursuant to the Tennessee Nuisance Statute, T.C.A. § 29-3-101, *et seq.* Fed.R.Civ.P. 65 and Tenn.R.Civ.P. 65 provide for injunctive relief in the form of a temporary restraining order on an ex parte basis. Jurisdiction to enforce the T.C.A. § 29-3-101 is specially granted through T.C.A. § 29-3-102 to the District Attorney General and enforced by the Chancery Court. Moreover, Pierotti, as District Attorney General, had the authority to immediately abate the alleged nuisance without judicial process, as approved and encouraged in T.C.A. § 29-3-101(c). Therefore, since Defendant Pierotti initiated a criminal prosecution in directing the abatement of a nuisance according to T.C.A § 29-3-101(c), and filed the nuisance complaint pursuant to T.C.A. § 29-3-103, this Court finds that he was conducting activities "intimately associated with the judicial phase of the criminal process," and as such is entitled to absolute prosecutorial immunity. *Id.*

■ This Court also holds that Defendant Parrish as Special Assistant to District Attorney General Pierotti, and Assistant Attorneys General Weirich and Nichols, are protected by absolute prosecutorial immunity. In their capacities as Special Assistants to the District Attorney and Assistant District Attorneys, Defendants Parish, Weirich, and Nichols were clothed with the District Attorney's authority to prosecute the Plaintiffs under the Tennessee Statute. Indeed, Weirich, and Nichols were carrying out the directives of District Attorney General Pierotti. Special Assistant Parrish was empowered to specially exercise a grant of prosecutorial authority which derived from his appointment. Therefore their actions deserve absolute prosecutorial immunity because they were integrally related to the judicial process of prosecuting the nightclubs as a nuisance under a presumptively valid ordinance. Consequently, the motions of Parrish, Weirich, and Nichols to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure are **GRANTED** as a matter of law as to the Cooper and Holland plaintiffs.

## MOTIONS OF SIMMONS AND GLANKER TO DISMISS QUASI JUDICIAL IMMUNITY

■ Similarly, Plaintiffs sue Defendants Simmons and Glankler for violations of their constitutional rights under the color of state law based on the role and participation in the club seizures and detentions. Glankler, an investigator for the District Attorney General's office, and Simmons, a T.B.I. agent, were directed by the Temporary Restraining Order "to enter, by use of reasonable force … [to] evacuate persons from the Place and corporate headquarters, and to take all reasonable steps necessary to maintain custody

exclusively for the court of the place." The Temporary Restraining Order further provides, "T.C.A. § 29–3–105 authorized this Court to close the Place and any other places from which the place is operated ... this Court restricts all access to the Place and the Personalty to Special Agent Simmons and Investigator Glankler and their designees, until further order ..."

As they were actions pursuant to the Chancery Court's [of Shelby County] Order, both Defendants claim quasi-judicial immunity as an affirmative defense to the Plaintiffs' claims.

■ Individuals who have performed duties deemed to be essential and integral to the judicial process may qualify for quasi judicial immunity. These individuals, therefore, are extensions of a "judicial officer who is immune." *Bush v. Rauch,* 38 F.3d 842, at 847 (6th Cir.1994). As a "judicial officer," Alissandratos's actions are immune from the instant lawsuit, Glankler and Simmons's conduct will be scrutinized to determine whether they are similarly immune. Using the "functional" approach, the Court will grant quasi judicial immunity if their actions were intimately connected to the judicial process.

The Sixth Circuit acknowledged the broad range of quasi judicial immunity when it granted the immunity to officials who previously executed a valid court order. *Bush,* 38 F.3d 842 (1994); *Vicory v. Walton,* 721 F.2d 1062, at 1066 (1983). The *Bush* court emphasized, "enforcing or executing a court order is intrinsically associated with a judicial proceeding." *Bush, supra.* Glankler and Simmons were expressly ordered to enforce the Temporary Restraining Order and take *in custodia legis* the "Place," located at the street address listed in the nuisance complaint and described in the Restraining Order. First, as the Order was properly issued under a presumptively valid statute, the activity is protected by immunity.[5] Second, the Order is, without question, an intrinsic part of a judicial proceeding. Officers acting pursuant to a judicial order are immune from liability, *supra.* Thus, based on the theory of quasi judicial immunity, Glankler and Simmons's execution of the valid Temporary Restraining Order is entitled to absolute immunity. Accordingly, the motions to dismiss of both Glankler and Simmons are **GRANTED** for failure to state a cause upon which relief can be granted.

## THE MOTION TO DISMISS OF WILLIAM GIBBONS YOUNGER ABSTENTION

■ Cooper sues Gibbons, for preliminary and permanent injunctive relief from prospective prosecution. Cooper seeks injunctive relief assuring that Gibbons, or any person acting in concert with him, will never proceed in any court to procure any form of process related to Cooper's businesses which would have the effect of inhibiting the operation of the businesses without giving Cooper and his attorney(s) notice and an opportunity to be heard prior to the issuance of such process. Gibbons moves for dismissal based on the *Younger* abstention doctrine asserting that it bars any injunctive request under the circumstances of the present case. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

■ The *Younger* abstention doctrine requires that a federal court abstain from enjoining a pending state criminal proceeding when the state's interest is so important that exercising federal jurisdiction would disrupt the comity between federal and state courts. *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, at 11, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). The Supreme Court has since applied *Younger* "to non criminal judicial proceedings when important state interests are involved." *Kelm v. Hyatt,* 44 F.3d 415, at 419 (6th Cir.1995) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n.* 457 U.S. 423, at 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982)). In *Pennzoil Co. v. Texaco, Inc.,* the Supreme Court extended *Younger* to state

---

5. Persons acting pursuant to a court order or in conjunction with judicial activities are absolutely immune. *Mays v. Sudderth,* 97 F.3d 107 (5th Cir.1996); *Valdez v. City and County of Denver,* 878 F.2d 1285 (10th Cir.1989); *Scarso v. Cuya-* *hoga County Dept. of Human Services,* 747 F.Supp. 381 (N.D.Ohio 1989) (Social Services employees executing judicial orders are absolutely immune).

civil proceedings. 481 U.S. at 17, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). *Younger* abstention in civil cases requires three elements to be met. Federal courts should abstain when (1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford Plaintiffs an adequate opportunity to raise constitutional claims. *Hayse v. Wethington*, 110 F.3d 18, at 20 (6th Cir.1997) (*citing Mann v. Conlin*, 22 F.3d 100 (6th Cir.1994)).

■■ If a state proceeding is pending at the time the action is filed in federal court, then the first requirement for *Younger* abstention is satisfied. *Federal Express Corp. v. Tennessee Pub. Serv. Comm'n*, 925 F.2d 962, at 969 (6th Cir.1991), *cert. denied*, 502 U.S. 812, 112 S.Ct. 59, 116 L.Ed.2d 35 (1991). The proper time for determining the applicability of *Younger* abstention is when the federal complaint is filed. *Zalman v. Armstrong*, 802 F.2d 199, at 204 (6th Cir.1986). The Sixth Circuit noted in *Zalman* that application of the *Younger* abstention doctrine is not merely mechanical in nature, but should emphasize the concerns and priorities that encompass the rule. 802 F.2d at 202 (6th Cir.1986). Cooper notes in his Memorandum in Opposition to several Defendants' Motions to Dismiss that no proceedings which he seeks to enjoin were pending when he filed his original complaint in federal court on July 11, 1997. Admittedly, Gibbons voluntarily non-suited the nuisance actions without prejudice on March 14, 1997, but he simultaneously notified the Criminal Court of Shelby County that the nuisance actions would be included in pending criminal cases against Cooper.

If the requested injunctive relief were granted, it would have the effect of collaterally attacking the constitutionality of T.C.A. § 29–3–101, *et seq.* as well as the constitutionality of statutes criminalizing the conduct that precipitated enforcement of the nuisance statutes. Such an injunction would also strip the District Attorney General's office of power to uncover and stop bona fide nuisance(s) thereby undermining the legitimate authority of the office. In evaluating the abstention doctrine in light of the particular facts and circumstances of this case, the Court finds that the first requirement of *Younger* abstention has been met.

The Court also finds that the state proceedings at issue involve important state interests. The state has an uncontested interest in exposing and prohibiting promotions of prostitution, illegal obscene live performances, acts that contribute to the delinquency of minors, as well as distributions and importations of obscene material. Cooper is currently under indictment for all the above mentioned crimes which stem from the July 11, 1996 raid that law enforcement officers conducted on his businesses. The state is not only interested in exposing and prohibiting such conduct on its face, but is also greatly concerned in fighting the health problems and societal ills that often accompany such outlawed conduct. Thus, the second prong of *Younger* abstention is met.

Finally, the plaintiffs have failed to demonstrate that they lack an opportunity to raise their litany of constitutional claims in state court. Nothing in the amended complaint nor Cooper's Memorandum in Opposition to the Motions to Dismiss addresses the issue of whether Shelby County Criminal Court is an appropriate setting to hear their constitutional claims. With the realization of all three *Younger* abstention doctrine requirements, the Court finds that based on the doctrine of abstention, this court should **ABSTAIN** from adjudicating the remainder of the case on its merits. Accordingly, the Court hereby **DISMISSES**, without prejudice, Plaintiff's claims for injunctive relief, pursuant to the abstention doctrine set forth in *Younger*, 401 U.S. 37, 91 S.Ct. 746.

### CLAIMS AGAINST MEMPHIS POLICE DEPARTMENT

■■ Plaintiffs' complaint alleges claims against the Memphis Police Department. The Memphis Police Department is not a suable entity. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Accordingly, Plaintiffs' complaint fails to state a cause of action upon which relief may be granted and the court sua sponte **DISMISSES** Plaintiffs' claims against the Memphis

Police Department under Fed.R.Civ.P. 12(b)(6).

## CONCLUSION

As no justiciable claims remain against any Defendant, the Court hereby **DISMISSES** Plaintiffs' complaint. Accordingly, the Court need not consider Holland's request for class action certification. The Clerk is directed to enter the appropriate order closing this case.