*RECOMMENDED FOR FUL*
Pursuant to Sixth C

ELECTRONIC CITATION:  2000
File Name:  00

# UNITED STATES CO

## FOR THE SIXT

———————

STEVEN CRAIG COOPER et al.,
*Plaintiffs-Appellants,*

*v.*

LARRY E. PARRISH et al.,
*Defendants-Appellees.*

Appeal from the United
for the Western District of
Nos. 97-02625; 97-02626
District J

Argued:  Septem

Decided and Filed:

Before:  RYAN, MOORE, and

———————

[*]The Honorable John R. Gibson,
Court of Appeals for the Eighth Circu

1

———————————

**COUNSEL**

**ARGUED:** John E. Herbison, Nashville, Tennessee, for Appellants. David Wade, MARTIN, TATE, MORROW & MARSTON, Memphis, Tennessee, for Appellees. **ON BRIEF:** John E. Herbison, Nashville, Tennessee, Robert S. Catz, Nashville, Tennessee, for Appellants. David Wade, MARTIN, TATE, MORROW & MARSTON, Memphis, Tennessee, David E. Caywood, CAUSEY, CAYWOOD, TAYLOR, McMANUS & BAILEY, Memphis, Tennessee, Mary M. Bers, Heather C. Ross, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, Larry E. Parrish, LAW OFFICES OF LARRY PARRISH, Memphis, Tennessee, Robert L. Hutton, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellees.

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  This case allegedly involves an attempt on the part of a state court chancellor, three state prosecutors, two state investigators, and a private attorney to shut down several nightclubs that feature nude dancing in Memphis, Tennessee. Plaintiffs appeal the district court's decision to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) their 42 U.S.C. § 1983 and related state law claims against all defendants on absolute immunity grounds. Plaintiffs also appeal the district court's decision to invoke *Younger* abstention and dismiss without prejudice their request for prospective injunctive relief.

Plaintiffs allege that the defendants violated their First Amendment, Fourth Amendment, and Fourteenth Amendment procedural and substantive due process rights. They allege that the chancellor violated their constitutional rights when he gave the prosecutors ex parte legal advice.

proceedings, then Cooper woul opportunity to raise his cons nuisance statute. Therefore, we on remand determine whether Gibbons included the nuisance proceedings, assuming that ther pending when Cooper filed hi district court determines on re General Gibbons did not includ state criminal proceedings, the address the merits of Cooper's r

**III. CONC**

For the reasons stated above court's dismissal of the federal c Alissandratos, Pierotti, Weiric Simmons. We **REVERSE** the the claims against Parrish and **R** him to the district court for fu with this opinion. We also **RE** dismissal of the state law claim and **REMAND** these claims to proceedings consistent with t **VACATE** the district court's claims for injunctive relief on and **REMAND** those claims to proceedings consistent with this

district court's conclusion that these proceedings would likely involve important state interests. As the district court in this case pointed out, the state has an important interest in "exposing and prohibiting promotions of prostitution, illegal obscene live performances, acts that contribute to the delinquency of minors, as well as distributions and importations of obscene material." *Cooper*, 20 F. Supp. 2d at 1211. Because Cooper was indicted pursuant to statutes that are meant to protect public health and safety, *see, e.g., DLS, Inc. v. City of Chattanooga,* 107 F.3d 403, 410-11 (6th Cir. 1997) (explaining that city ordinance prohibiting entertainers in adult establishments from coming within six feet of customers did not violate First Amendment because ordinance furthered important state interests in prevention of crime and disease), the second *Younger* requirement would be satisfied by pending state prosecutions.

The third requirement for *Younger* abstention is that there be "an adequate opportunity in the state proceedings to raise constitutional challenges." *Fieger v. Thomas,* 74 F.3d 740, 745 (6th Cir. 1996) (quoting *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). In the present case, this requirement would be satisfied only if District Attorney General Gibbons included the nuisance charges against Cooper in the criminal proceedings that were pending in state court, assuming that criminal proceedings were in fact pending when Cooper filed his federal complaint. Indeed, if state criminal proceedings involving the nuisance charges were pending at the time Cooper filed his federal complaint, then Cooper could have raised his constitutional claims in these proceedings. *See Tennessee v. Draper,* 800 S.W.2d 489, 497 (Tenn.Crim.App. 1990) ("Our courts have held that constitutional issues may be raised and considered at any stage of the proceedings.") (footnote omitted); *Veach v. Tennessee,* 491 S.W.2d 81, 83 (Tenn. 1973) (explaining that a constitutional question may be raised at any time in a criminal proceeding even though appellate courts generally only review questions presented for determination in the trial court). However, if District Attorney General Gibbons did not include the nuisance charges in the state criminal

Plaintiffs allege that the prosecu violated their constitutional righ parte communications with t nuisance and civil forfeiture co restraining orders, executed the case of one of the prosecutors allegations in the complaints. the two state investigators viola when they executed the restrain

For the reasons stated below court's dismissal of the claim three state prosecutors, and the t case. The district court, howev claims against Larry Parrish b receive absolute or qualified **REVERSE** the district court's d Parrish and **REMAND** the claim court for further proceedings con also **REVERSE** the district cou claims against all the defendants to the district court for further this opinion. Finally, we **VA** dismissal of the plaintiffs' cla *Younger* abstention grounds and the district court for further pro opinion.

### I.  BACKG

Plaintiffs set forth their claim two separate complaints, which district court consolidated on A purposes, we must accept nonconclusory allegations cont *Buckley v. Fitzsimmons,* 509 U.

Plaintiffs allege that as early Parrish, a private attorney pract John Pierotti, who at the time General for the Thirtieth Judi

agreed to investigate certain nightclubs in the Memphis area. District Attorney General Pierotti subsequently directed Amy Weirich and Jennifer Nichols, two of his assistant district attorneys, to work on the case. On July 7, 1996, Larry Parrish and the three prosecutors from the district attorney general's office met with D.J. Alissandratos, Chancellor for the Thirtieth Judicial District of Tennessee. This was the first of several meetings in which Chancellor Alissandratos allegedly gave Parrish and the three prosecutors "*ex parte* legal advice as to how the pleadings and/or supporting documentation in such lawsuits [involving the nightclubs] should be drafted so as to ensure issuance of *ex parte* orders to close the Plaintiffs' nightclubs or showbars." Joint Appendix ("J.A.") at 495 (Cooper Am. Compl. ¶ 30).

On July 11, 1996, Assistant District Attorneys Weirich and Nichols, along with Larry Parrish, who earlier that day had been sworn in as a "Special" Assistant District Attorney, filed several complaints in Shelby County Chancery Court in which they alleged that nightclubs in the Memphis area should be shut down because they were in violation of Tennessee's public nuisance statute. Although District Attorney General Pierotti was not listed as counsel in the complaints, as relator he did vouch for the truth of the factual allegations contained in the complaints.

Once Parrish and the other prosecutors had filed the complaints, they asked Chancellor Alissandratos to issue several temporary restraining orders pursuant to TENN. CODE ANN. § 29-3-105 (Michie 1999). The temporary restraining orders purported to authorize Mark Glankler, an investigator in the district attorney general's office, and John Simmons, an agent of the Tennessee Bureau of Investigation, to enter and seize eight of the nightclubs that featured nude dancing in Memphis. On the night of July 11, 1996, at approximately 6:00 p.m., officers entered each of the eight nightclubs and announced that the club was being seized. The employees and customers inside the nightclubs were detained by law enforcement officers for periods of time ranging from one to five hours. The officers required the club occupants to

(6th Cir. 1997). The *Younger* a
federal court to abstain from en
proceeding "when the state's i
exercising federal jurisdiction
between federal and state courts
have noted that abstention i
satisfaction of three elements
abstain when (1) state proceedin
proceedings involve an importa
state proceedings will afford
opportunity to raise his constitu

The first element for *Younge*
state court proceeding was pen
federal complaint. *Zalman v. A*
(6th Cir. 1986). Cooper a
proceedings were pending in
federal complaint on July 11, 1
District Attorney General Gibbo
nuisance action before Cooper
District Attorney General Gibb
criminal proceedings involving t
charges were still pending again
federal complaint. There is i
record, however, to determine
requirement has been met.[3] Th
the case to the district court so t
criminal proceedings were actu
when he filed his federal compl

If there were state criminal
Cooper filed his federal compl

---

[3]There is no evidence that we can
indictments that a grand jury returned
1996 – that suggests that criminal p
Cooper when he filed his federal com
these indictments could have been d
federal complaint, we cannot
*Younger* requirement has been met.

principles if it had the opportunity to address the state law claims in this case. However, there may be certain nuances in the Tennessee common law immunity doctrine that Tennessee courts have yet to address. Thus, we suggest that on remand the district court consider whether it should decline to exercise its supplemental jurisdiction over the state law claims in this case pursuant to 28 U.S.C. § 1367(c)(1). If the district court on remand chooses to exercise its supplemental jurisdiction, it will need to determine what immunities (if any) under Tennessee law pertain to the various state law claims.

## D. *Younger* Abstention

The Cooper plaintiffs also sued William Gibbons, the current District Attorney General in Shelby County, in an attempt to obtain a prospective injunction that would prevent Gibbons, or any person acting in concert with him, from ever pursuing an action that has the effect of inhibiting Cooper's businesses without giving him prior notice and an opportunity to be heard. Cooper specifically seeks:

> [P]reliminary and permanent injunctions prohibiting the Defendants Gibbons, Parrish, Weirich and Nichols, their agents, servants, employees and all person[s] acting in concert with these Defendants, from proceeding in any court to procure any form of process related to the Plaintiffs' businesses which would have the effect of inhibiting the Plaintiffs' exercise of constitutional rights or interfering with operation of the Plaintiffs' business(es) without giving the Plaintiffs and their attorney(s) notice and an opportunity to be heard prior to the issuance of such process.

J.A. at 508 (Cooper Am. Compl. ¶ 85). The district court abstained pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), and dismissed without prejudice Cooper's claim for injunctive relief. *Cooper*, 20 F. Supp. 2d at 1211.

We review a district court's decision to invoke *Younger* abstention de novo. *Hayse v. Wethington*, 110 F.3d 18, 20

produce identification, which w These individuals were then ser them to report to the district a provide sworn statements.

Law enforcement officers als of Southern Entertainment company that conducted various three of the nightclubs. The eigh Management Business offices custody of the district attorney days; thus, the owners did n respective properties until the re

On December 10, 1996, the Sh general's office obtained crimin jury that charged Steven Coop nightclubs, with presenting o promoting prostitution, public i distributing obscene material. action against Cooper and other federal court but ultimately rem Court of Shelby County. On Gibbons, who had replaced Pie General for the Thirtieth Distri nonsuited the civil public nu dismissed without prejudice. notified the Criminal Court of S raised in the civil nuisance actio criminal case that at the time wa

On July 11, 1997, the plaintiff separate complaints in federal di consolidated the two cases – *Co v. Parrish* – on August 27, 1997. his businesses brought a 42 U.S. Defendants Alissandratos, Parris Glankler, and Simmons were capacities for the roles these de public nuisance suit and seizing

that these defendants violated his First Amendment, Fourth Amendment, and Fourteenth Amendment procedural and substantive due process rights, and he alleged that these defendants had engaged in a civil conspiracy under Tennessee common law, had conspired to injure his business under Tennessee common law, and had engaged in an abuse of process. Finally, Cooper asked the district court permanently to enjoin William Gibbons, the current district attorney general in Shelby County, from interfering with his businesses without giving him prior notice and an opportunity to be heard. J.A. at 508 (Cooper Am. Compl. ¶ 85).

Plaintiff Amanda Holland, who was an employee at one of the nightclubs, also brought a § 1983 suit against Parrish, Pierotti, Glankler, Simmons, and various unnamed law enforcement officers. Plaintiffs named in the Holland complaint also included employees and a delivery person who was detained by law enforcement officers on the night of the raid. Holland alleged the same four constitutional violations listed in Cooper's amended complaint, and she asked the district court to certify her case as a plaintiff class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (2), and/or (3).

Chancellor Alissandratos eventually filed a motion to dismiss all of the claims against him in the Cooper complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on various grounds including that he was entitled to absolute judicial immunity. Parrish, Pierotti, Weirich, Nichols, Glankler, and Simmons also moved to dismiss the claims against them pursuant to Rule 12(b)(6) on absolute and qualified immunity grounds. On May 5, 1998, the district court dismissed the claims against Chancellor Alissandratos, J.A. at 627 (Dist. Ct. Order), and on August 26, 1998, the district court dismissed the claims against the other defendants. *Cooper v. Parrish*, 20 F. Supp. 2d 1204 (W.D. Tenn. 1998). Plaintiffs now appeal the district court's dismissal of their claims.

Parrish was not performing any u when he allegedly engaged in th issue in this case; thus, no pub impaired if he is forced to resol merits. Because Parrish was no state when he participated in th legal action against the nig circumstances in this case do concerns that underlie the qualif not eligible to assert a qualified i

### C. Immunity for

The Cooper plaintiffs have als engaged in a civil conspiracy un conspired to injure Cooper's common law, and engaged in district court dismissed the explicitly on these state law cl courts appear to incorporate t doctrine used by federal courts *Shell v. Tennessee*, 893 S.W.2d *Willett v. Ford*, 603 S.W.2d 1979), we believe that the ex common law immunity doctrin issues of state law that Tenness fully.

In *Shell*, the Tennessee Supr precedent in § 1983 cases to dete state law claims against an assist dismissed on absolute immunity at 422-23. The court cited *Buck* 259 (1993), and *Burns v. Reed* explained that these cases "ar claims] because § 1983 inco immunities historically granted *Shell*, 893 S.W.2d at 422 n.6. B in *Shell*, we believe that the generally would apply federa

circumstances. *Cullinan v. Abramson,* 128 F.3d 301, 310 (6th Cir. 1997), *cert. denied,* --- U.S. ---, 118 S. Ct. 1560 (1998). In *Cullinan*, we held that a law firm that had been hired by the City of Louisville to serve as outside counsel was entitled to qualified immunity against § 1983 claims. *Id.* The court relied exclusively on a statement made by the Supreme Court in *Richardson v. McKnight*, 521 U.S. 399, 407 (1997), which noted in dictum that "the common law '*did* provide a kind of immunity for certain private defendants, such as doctors or lawyers *who performed services at the behest of the sovereign*.'" *Id*. at 310 (second emphasis added). This statement, along with the fact that the panel saw "no good reason to hold the city's in-house counsel eligible for qualified immunity and not the city's outside counsel," led the panel to conclude that the private attorneys in that case could successfully assert a qualified immunity defense. *Id.*

Even if we assume that the Supreme Court in *Richardson* intended to extend the qualified immunity doctrine to "doctors or lawyers who performed services at the behest of the sovereign," *Richardson*, 521 U.S. at 407, Parrish still is not entitled to qualified immunity because the circumstances in this case are not analogous to those in *Cullinan*. For instance, the court in *Cullinan* pointed out that there was no doubt that the private attorneys in that case were acting at the behest of the city. As the court explained, "[t]he city retained outside legal counsel for the defense of the lawsuit, entering into a professional service agreement with [the law firm]." *Cullinan,* 128 F.3d at 305-06. In the present case, by contrast, there is little – if any – evidence that shows that Parrish was acting at the behest of the state when he helped the prosecutors pursue legal action against the nightclubs. In fact, Parrish acknowledges in his brief that he was not paid by the district attorney general's office for his legal services. Parrish's Br. at 16.

Furthermore, we believe that extending qualified immunity to a private attorney who works alongside prosecutors in an unofficial capacity would be inconsistent with the goals and objectives that underlie the qualified immunity doctrine.

## II. ANAL

We review de novo a dismissa Civil Procedure 12(b)(6) for fa which relief can be granted, con light most favorable to the plain well-pleaded factual allegati *Resources, Inc. v. Tatum,* 58 F.3 *cert. denied*, 516 U.S. 1158 appropriate unless it appears bey prove no set of facts in suppor them to relief. *Conley v. Gibso*

### A. Absolute Immunity

The district court dismissed th the defendants who had been capacities on grounds that these absolute immunity. The Sup "functional approach" to deter entitled to absolute immunity. *B* approach looks to "the nature of the identity of the actor who *Forrester v. White,* 484 U.S. 219 also explained that officials who defense bear the burden of demo to absolute immunity given t performed. *Burns v. Reed,* 500

### 1. Absolute Judicial Immunit

Plaintiffs argue that Chancello to absolute immunity because conduct and acted as a de fa prosecutors "*ex parte* legal adv and/or supporting documentatio the nightclubs] should be drafte *ex parte* orders to close th showbars." J.A. at 495 (Cooper officers generally are absolutely monetary damages under § 198

*Mireles v. Waco,* 502 U.S. 9, 9-10 (1991). The rationale for granting judicial officers absolute immunity when they act in their judicial capacities is that judicial officers should be free to make controversial decisions and act upon their convictions without fear of personal liability. *Stump v. Sparkman,* 435 U.S. 349, 355-56 (1978).

There are two situations, however, in which judicial officers are not absolutely immune from potential liability. "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (emphasis in original) (citations omitted); *see also Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir.), *cert. denied*, --- U.S. ---, 118 S. Ct. 560 (1997). We therefore must consider whether Chancellor Alissandratos's actions were taken in his judicial capacity and whether his actions were taken in the complete absence of all jurisdiction.

The Supreme Court has explained that courts should focus on the "nature" and "function" of an act, and not the act itself, when deciding whether certain actions were taken in a judge's judicial capacity. *Mireles,* 502 U.S. at 13 (quoting *Stump,* 435 U.S. at 362). This functional approach typically turns on two factors. First, a court must determine whether an act is related to those general functions that are normally performed by a judicial officer. *Stump*, 435 U.S. at 362. Second, a court must assess whether the parties expected to deal with the judicial officer in the officer's judicial capacity. *Id.* Plaintiffs in the present case argue that Chancellor Alissandratos's ex parte contact with the district attorney general's office and his legal advice regarding ways that the prosecutors could improve their complaints are prosecutorial in nature and therefore are not related to those general functions that are normally performed by a chancellor.

In *Barnes v. Winchell,* 105 F.3d 1111, 1115-22 (6th Cir. 1997), we had the opportunity to address what constitutes a prosecutorial as opposed to a judicial act in the absolute

Pierotti's conduct without ex violated their constitutional rig these pleadings was sworn on Pierotti, who vouched for the t pleadings." J.A. at 496 (Coop plaintiffs have failed to show ho to the truth of the allegations in t nuisance complaints deprived th Fourth Amendment, or Fourteen the district court should have dis against District Attorney Gen immunity grounds.

**2. Qualified Immunity for Pa**

Plaintiffs argue that Larry Parr a qualified immunity defense be public official when he a unconstitutional conduct at issu have concluded that Parrish was when he assisted the prosecutor to absolute immunity, we still m successfully assert a qualified im

Private litigants generally a qualified immunity from suit u 504 U.S. 158, 168-69 (1992); *s* F.3d at 698-99; *Duncan v. Peck,* Cir. 1988). However, we hav private attorneys who work pursu are eligible to receive qualified

---

[2]If a private party has conspire constitutional rights, then that party qu held liable pursuant to § 1983 – eve eligible to assert a qualified immunity 158, 168-69 (1992); *see also Vector Re* who is not a public official may be lia and yet not be entitled to qualified i official, the reason for affording quali

at 1154.  "If the answer is yes, then the second step is to determine whether the right is so 'clearly established' that a 'reasonable official' would understand that what he is doing violates that right."  *Brennan,* 78 F.3d at 1154 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

## 1.  Qualified Immunity for Pierotti

Plaintiffs argue that District Attorney General Pierotti violated their First Amendment and Fourth Amendment rights, as well as their Fourteenth Amendment procedural and substantive due process rights, when he vouched for the truth of the allegations in the civil forfeiture and public nuisance complaints.  A civil rights plaintiff, however, cannot simply assert a constitutional violation and rely on broadly stated general rights if that plaintiff hopes to overcome a motion to dismiss on qualified immunity grounds.  *Garvie v. Jackson,* 845 F.2d 647, 650 (6th Cir. 1988).  Instead, the plaintiff must show some sort of connection between the defendant's conduct and the alleged constitutional violations.  *See Anderson v. Creighton,* 483 U.S. 635, 639-40 (1987).  Indeed, we have explained that plaintiffs must allege sufficient facts that demonstrate that their constitutional rights have been violated in those instances where a defendant has asserted a qualified immunity defense.  *Cameron v. Seitz,* 38 F.3d 264, 273 n. 2 (6th Cir. 1994); *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir. 1987).  Although a district court should give plaintiffs an opportunity to amend a complaint once a qualified immunity defense is raised, plaintiffs cannot overcome a motion to dismiss on qualified immunity grounds unless they allege facts necessary to show that a defendant has violated their constitutional rights.  *Cameron,* 38 F.3d at 273 n.2.

In this case, plaintiffs have failed to include factual allegations in their amended complaints that show that Pierotti violated their constitutional rights.  Although the district court gave the plaintiffs an opportunity to amend their original complaints after the defendants asserted a qualified immunity defense, the plaintiffs continued simply to describe

immunity context.  We determ judge had acted within his judi allegedly had directed two indiv criminal complaint and had help of the complaints.  Although th been improper under state la "absolute judicial immunity e exercising his or her authority, errors.'"  *Id.* at 1120 (quoting Because the parties independent judge, and because the imprope general judicial functions that a presiding over a criminal case, was acting in his judicial cap criminal charges and helped t criminal complaint.  *Id.* at 1121

Like the municipal judg Alissandratos was acting in hi engaged in ex parte contact with prosecutors legal advice regar improve their case.  As Chancel out, Tennessee Rule of Civil Pro judicial officer to issue a res commencement of legal action party.  Moreover, Rule 65.03(2) order may be granted only by a ju action is pending or is to be Alissandratos is a judge of the nuisance action against the night was acting within his judicial au prosecutors from the district atto purpose of deciding whethe restraining orders.

Furthermore, even though participation in ex parte commun in which he allegedly discussed lawsuits may have been improp TENN. SUP. CT. R. 10, Cannon 3.

a judge shall not engage in ex parte communications with one of the parties unless "the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication"), these communications were nonetheless related to his general judicial functions, which include the authority to issue an ex parte restraining order prior to the commencement of a lawsuit. TENN. R. CIV. P. 65.03. Indeed, even if we assume that Alissandratos committed "grave procedural errors" when he gave the ex parte legal advice, he still was acting within his judicial capacity because his conduct is related to those general judicial functions that a chancellor would normally perform. *See Barnes,* 105 F.3d at 1120.

We also must consider whether Chancellor Alissandratos's actions were taken in the complete absence of all jurisdiction. *Stump*, 435 U.S. at 362. The Supreme Court has instructed that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356-57 (quoting *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 351 (1871)) (footnote omitted). We have interpreted this language to mean that there is sufficient jurisdiction for immunity purposes where a court has *some* subject matter jurisdiction over the underlying legal actions. *Barnes*, 105 F.3d at 1122; *see also Ireland,* 113 F.3d at 1441 ("If the matter upon which the judge acts is clearly outside the subject matter jurisdiction of the court over which the judge presides, the act is done in the clear absence of all jurisdiction.").

In this case, Chancellor Alissandratos had subject matter jurisdiction over the public nuisance action that the district attorney general ultimately brought against the nightclubs. TENN. CODE ANN. § 29-3-102 (1998) ("[J]urisdiction is hereby conferred upon the chancery, circuit, and criminal courts to abate the public nuisances defined in [Tennessee Code Annotated] § 29-3-101, upon petition in the name of the state, upon relation of the attorney general, or any district

been properly appointed to act o court explained:

> We find no statutory authori District Attorney General to i to act on behalf of the state fro took an oath of office in July statutory authority authorizi General to formally appoint 'Special Assistant Distric understanding that Parrish w from private sources.

*Id.* at \*4. Furthermore, the cour never properly appointed by counsel to the District Atto Tennessee Code Annotated § 8 used to compensate Parrish – he by a private non-profit orga enforcement efforts in oppositio appointment. *Id.*

We agree with the Tennesse District Attorney General Piero statutory authority when he app "Special" Assistant District A Because Parrish does not qualify entitled to absolute prosecutoria the district court erred when it di against him on absolute immun

### B. Qualified Immunity

Defendants Pierotti and Parr entitled to qualified immunity. test for determining whether pu qualified immunity. *Brennan v* F.3d 1152, 1154 (6th Cir. 1996 whether plaintiffs have alle constitutionally protected right a *v. Lewis,* 118 S. Ct. 1708, 1714 n

to cover the detention of the customers at the nightclubs and the seizure of the Southern Entertainment Management Company. Glankler and Simmons therefore did not engage in conduct that exceeded the scope of the temporary restraining orders, and they are entitled to absolute immunity for the role they played in the execution of the restraining orders.

### 4. Absolute Immunity for Parrish

Plaintiffs also argue that the district court improperly dismissed their claims against Larry Parrish, a private attorney licensed to practice in Tennessee who was informally sworn in as a "Special" Assistant District Attorney on July 11, 1996, because Parrish was not acting as an official government officer and therefore is not entitled to absolute immunity. Private attorneys who allegedly engage in unconstitutional conduct while acting under color of state law are not entitled to immunity. *See Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 699 (6th Cir. 1996) (denying private attorneys qualified immunity in § 1983 action). Thus, Parrish is not entitled to absolute immunity unless he can show that he was acting as a public official when he allegedly engaged in the unconstitutional conduct. *See id.*

We conclude that Parrish was not acting as a public official when he allegedly engaged in the conduct at issue in this case because he was never properly appointed to serve as an assistant district attorney. *See Tennessee v. Culbreath*, 1999 WL 134685, *1-2 (March 9, 1999 Tenn.Crim.App.), *cert. granted,* Sept. 13, 1999 (Tenn.). In *Culbreath*, a case that involves the prostitution and obscenity charges that have been brought against several of the plaintiffs in the present case,[1] the Tennessee Court of Criminal Appeals disqualified Parrish from serving as a prosecutor on grounds that he had never

---

[1]We cite *Cullbreath* simply as an authority on Tennessee law. Thus, we need not and do not consider whether Parrish is precluded from arguing that he was properly appointed to serve as a "Special" Assistant District Attorney after the decision in the *Cullbreath* case.

attorney general."); *see also* TE (stating that a chancellor has temporary writ of injunction, e further continuance of such nui building or place wherein the s even though Chancellor Alissa excess of his authority when he m the district attorney general's o legal advice, his actions for judi not taken in clear absence of all

Because the factual allegati situation where Chancellor Ali judicial capacity and within the jurisdiction, he is absolutely imm violated the plaintiffs' constituti in meetings with the prosecuto court properly dismissed these plaintiffs have failed to state Alissandratos upon which relief

### 2. Absolute Prosecutorial Imm

District Attorney General Pi Attorneys Weirich and Nichols properly granted their Rule 1 because they are entitled to abso Absolute prosecutorial immun immunity, is a common law prin from § 1983 liability. *Imbler* 430-31 (1976). The Suprem "functional" approach for determ entitled to absolute prosecutoria court should look to "the natur not the identity of the actor wh 484 U.S. at 229; *see also Irelan*

This functional approach prosecutor's activities are "int judicial phase of the criminal p 430. Those acts that occur in th

role as an advocate for the state, e.g., acts taken to prepare for the initiation of judicial proceedings or to prepare for trial, are protected by absolute immunity. *Buckley*, 509 U.S. at 273; *see also Ireland*, 113 F.3d at 1444-45. By contrast, a prosecutor who "performs the investigative functions normally performed by a detective or police officer" such as "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested" is entitled only at most to qualified immunity. *Buckley*, 509 U.S. at 273.

Plaintiffs argue that the prosecutors in this case are not entitled to absolute immunity because they were pursuing a civil action when they prepared and filed the public nuisance and civil forfeiture complaints. Although the Supreme Court has yet to address directly whether prosecutors are entitled to absolute immunity when they act as advocates in the course of a civil rather than a criminal action, several other courts of appeals have determined that prosecutors are protected by absolute immunity "when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action." *Schrob v. Catterson*, 948 F.2d 1402, 1411 (3rd Cir. 1991); *see also Mendenhall v. Goldsmith,* 59 F.3d 685, 691 (7th Cir.) (explaining that the fact that "the alleged misconduct here arose in the context of a civil proceeding with a law enforcement purpose does not render absolute immunity inappropriate. The essential inquiry is whether [the prosecutor] was functioning in an enforcement role analogous to that of a prosecutor.") (citations and footnote omitted)), *cert. denied,* 516 U.S. 1011 (1995). We agree that the prosecutors in this case may still be absolutely immune even though the alleged constitutional violations occurred when the officials were pursuing a civil action. Indeed, as long as the prosecutors were functioning in an enforcement role and acting as advocates for the state in initiating and prosecuting judicial proceedings, they are entitled to an absolute immunity defense.

district attorney general swear contained in a complaint. Pie professional judgment as a pros the truth of allegations in th performed "an act that any com performed." *Kalina,* 118 S. Ct. Court has specifically held that " function of the witness, not of acting as an advocate when h allegations in the public nu complaints, and he therefore i immunity for this conduct. *Id.* a

### 3. Absolute Immunity for Inv

Plaintiffs also argue that th dismissed their claims against M in the district attorney general's o agent of the Tennessee Bureau immunity grounds. In their com "Glankler and Simmons particip occupation of the Plaintiffs' supervised law enforcement challenged seizures." J.A. at 49

Law enforcement officers are as long as they are able to show quasi-judicial function. *Bush*, 38 immunity extends to those pe integral or intertwined with th persons are considered an arm o immune." *Id.* Law enforcem absolute quasi-judicial immunit valid court order. *Id.* at 847-48

Glankler and Simmons have pursuant to the temporary res detained those customers who seized property that was not temporary restraining orders. language in the temporary restra

temporary restraining orders authorize law enforcement officials to restrain any person who could devalue, remove, or diminish the property – a category that could reasonably include those customers who were at the nightclubs on the night of the raid – but they also authorize these officials to seize property that is in any way connected to the operation of the nightclubs – a category that certainly includes the Southern Entertainment Management Company. Thus, the prosecutors did not engage in conduct that exceeded the scope of the temporary restraining orders, and they are entitled to absolute quasi-judicial immunity for their participation in the seizure of property and detention of persons at the nightclubs.

Finally, we must determine whether District Attorney General Pierotti is absolutely immune for swearing to the truth of the factual allegations in the public nuisance and civil forfeiture complaints. Plaintiffs allege that "[e]ach of these pleadings was sworn on the oath of the Defendant Pierotti, who vouched for the truth of the averments of the pleadings." J.A. at 496 (Cooper Am. Compl. ¶ 34). The allegations in the present case are directly analogous to allegations made in *Kalina v. Fletcher*, --- U.S. ---, 118 S. Ct. 502, 509 (1997), a case in which the Supreme Court held that a prosecutor who vouched for the truth of the contents of a criminal complaint in order to obtain an arrest warrant was only entitled to assert qualified immunity. *See also Ireland,* 113 F.3d at 1447-48 (holding that a prosecutor or investigator who vouches for truth of allegations in a complaint was not entitled to absolute immunity).

Pierotti attempts to distinguish *Kalina* by pointing to the Court's statement that "neither federal nor state law made it necessary for the prosecutor [in *Kalina*] to make that certification [in which she swore to the truth of the allegations in a complaint]." *Kalina*, 118 S. Ct. at 509. Pierotti argues that he is entitled to absolute immunity because Tennessee Code Annotated § 29-3-102 specifically authorizes a district attorney general, as well as various other officials or ten or more citizens, to bring a public nuisance suit on relation for the state. Section 29-3-102 does not, however, *require* that a

Plaintiffs argue that the pros they were functioning as advo entitled to absolute immunity wh parte communications with Ch prepared and decided to file th forfeiture complaints; (3) soug orders; (4) participated in the nightclubs; and (5) in the case Pierotti, decided to vouch for the complaints.

The challenge to the prosecut communications with Chance disposed of. In their complaint, Weirich, and Nichols met with A of privately (and unethicall communications *regarding law later* related to nightclubs or sho nude expressive dancing." J.A. ¶ 28) (second emphasis added). the prosecutors were performing that are normally performed by when they engaged in the ex Chancellor Alissandratos. Inst when construed in the light mo simply describe a situation w advocates were meeting with discuss the public nuisance laws orders that they had decided to

Several of the other allegatio are similar to allegations made i 45, a case in which we held entitled to absolute prosecutoria deciding to file a criminal co warrant, and presenting the char *Ireland*, the plaintiff had failed part of the prosecutors that "investigative activities unde [prosecutors'] decision to file cr

We held that the prosecutors were entitled to absolute immunity notwithstanding the political motives that allegedly led the prosecutors to pursue the criminal charges because "[a] prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer fall squarely within the aegis of absolute prosecutorial immunity." *Id.* at 1446.

Like the prosecutors in *Ireland*, the prosecutors in the present case are entitled to absolute immunity for their decision to file the public nuisance and civil forfeiture complaints and for their decision to seek the temporary restraining orders. Plaintiffs allege that Parrish, Weirich, and Nichols "filed on behalf of the State of Tennessee on relation of the Defendant Pierotti a series of prolix pleadings against various *in rem* and *in personam* Defendants, including the instant Plaintiffs, alleging the existence of public nuisances." J.A. at 496 (Cooper Am. Compl. ¶ 34). Plaintiffs also alleged that "[u]pon filing of the complaints referenced in ¶ 34 above, the Defendants Pierotti, Parrish, Weirich and Nichols importuned the Defendant Alissandratos to issue an *ex parte* directive in each case, which was captioned 'TEMPORARY RESTRAINING ORDER'." J.A. at 497 (Cooper Am. Compl. ¶ 36). Once again, the plaintiffs have failed to allege that Pierotti, Weirich, and Nichols engaged in any investigative activities. Because the prosecutors were functioning squarely within their capacities as advocates for the state when they filed the public nuisance and civil forfeiture complaints and persuaded Chancellor Alissandratos to issue the temporary restraining orders, they are entitled to absolute prosecutorial immunity.

District Attorney General Pierotti and Assistant District Attorneys Weirich and Nichols are also protected by absolute immunity for the role that they allegedly played in the seizure of property and detention of persons at the nightclubs. Plaintiffs allege that Weirich and Nichols "participated in the unlawful forcible occupation of the Plaintiffs' properties or directed or supervised law enforcement personnel in effecting the challenged seizures." J.A. at 498 (Cooper Am. Compl.

¶ 40). Plaintiffs also allege tha each nightclub . . . resulted di direction and control of the Defe J.A. at 499 (Cooper Am. Compl official is entitled to absolute q that official acts pursuant to a v act of "enforcing or executing associated with a judicial proce F.3d 842, 847 (6th Cir. 1994) (c in this case therefore cannot su the seizure of the nightclubs prosecutors engaged in conduct temporary restraining orders.

Plaintiffs allege that the prose the temporary restraining order customers who were at the nightc was not explicitly identified i orders. Even if we assume that t challenge the treatment of their c we express no opinion, we still the temporary restraining orders the temporary detention of the cu the seizure of the business office Management Company, a comp business functions related to th temporary restraining orders au restrain all "parties, proprietors, agents . . . [and] all other *person from* devaluing, removing, dimi destroying, deleting, amending 349 (Temporary Restraining O The temporary restraining o prosecutors to seize "all persona . . . whether located on or with location (including, but not limit headquarters, off-premises depositories) used in any wa operation, conduct and/or mainta at 349 (Temporary Restraining